STANLEY E. ALLEN and LYDIA ALLEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allen v. Commissioner
Docket Nos. 17574-81, 6925-82.
United States Tax Court
T.C. Memo 1986-125; 1986 Tax Ct. Memo LEXIS 486; 51 T.C.M. (CCH) 728; T.C.M. (RIA) 86125; March 26, 1986. John P. Konvalinka and H. Wayne Grant, for the petitioners. John L. Hopkins, for the respondent. SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax in the amounts of $21,707.44, $34,373.78, $25,671.46 and $76,920.81 for the calendar years 1973, 1974, 1975 and 1976, respectively, and additions to tax under section 6653(b)[1] in the amounts of $10,853.72, $17,186.89, $12,835.73 and $38,460.09 for these respective years. In a stipulation filed at the trial, petitioners conceded that Stanley E. Allen was liable for the addition to tax for fraud for each of the years 1973, 1974 and 1975, and respondent conceded that Lydia Allen was not liable for the addition to tax for fraud for any of the years here in issue. The parties also stipulated all the figures for bank deposits, cash expenditures, non-income deposits and other adjustments to gross income as determined by respondent in his notices *488 of deficiency for the years here in issue, petitioners thereby effectively conceding the deficiencies as determined by respondent. After these various concessions, the only issues remaining for decision are (1) whether respondent properly determined the addition to tax for fraud for the year 1976 with respect to Stanley E. Allen; (2) whether, for each of the years here in issue, Lydia Allen should be relieved from liability for the deficiencies in tax determined by respondent as an innocent spouse under section 6013(e), as amended by section 424(c) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 803; (3) whether Lydia Allen signed the joint tax returns filed with her husband Stanley E. Allen for each of the years 1973, 1974, 1975, and 1976 under duress so that the returns should be considered not to be joint returns; and (4) whether the assessment of any deficiency in tax against Lydia Allen for each of the years here in issue is barred by the statute of limitations, and whether assessment of a deficiency against Stanley E. Allen for the year 1976 is barred by the statute of limitations. [2]
*489 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, who were husband and wife during the years here in issue, resided in or near Ocoee, Tennessee, at the time of the filing of their petition in this case. They filed joint Federal income tax returns for each of the calendar years 1973, 1974, 1975 and 1976 with the Director, Memphis Service Center, Memphis, Tennessee. During each of the calendar years 1973, 1971, 1975 and 1976, a checking account and a savings account were maintained in the name of Lydia Allen at the Benton Banking Co. in Benton, Tennessee. The respective numbers of these accounts were 030-029-2 and 01-000014-9. During the calendar years 1973 and 1974, a savings account was maintained in the name of Lydia Allen at Cleveland Bank and Trust Co. in Cleveland, Tennessee, with Acct. No. 64-0012218. During the calendar years 1975 and 1976, Stanley E. Allen maintained a checking account in the name of Peaceful Valley Farms at Benton Banking Co. in Benton, Tennessee, with Acct. No. 032-770-0, and during 1976, he maintained a checking account at Benton Banking Co. in Benton, Tennessee, in the name of Allen Used Cars with *490 Acct. No. 033-213-5. Two of the accounts maintained at the Benton Banking Co. of Benton, Tennessee, were in the name of Lydia Allen because prior to the year 1973 a judgment had been obtained against Mr. Allen by an individual to whom he had sold an automobile, which was determined to be a stolen automobile. Mr. Allen was of the opinion that funds in an account in Lydia Allen's name could not be reached by the judgment creditor. Lydia Allen wrote most of the checks on the accounts in her name, but except for ordinary bills such as utility bills, the checks were written at the direction of Mr. Allen as to the amount and the payee. Occasionally Mr. Allen wrote a check himself on the accounts and signed his wife's name thereon. Most of the deposits were made by Mr. Allen. Bank personnel made out most of the deposit slips for Mr. Allen but a few of the deposit slips were made out by Mrs. Allen. Monthly bank statements were received and usually Mr. Allen took them. Lydia Allen could see the bank statements if she wanted to, but did not in fact look at them. Mr. Allen kept the bank balance and in so doing entered the checks on the check register. Mrs. Allen had access to the *491 checking account balances but generally did not look at them. She never questioned writing checks Mr. Allen told her to write and did not question whether there was money in the accounts to cover the checks she wrote. The following schedule shows petitioners' bank deposits, cash expenditures and non-income deposits and other non-income items for each of the calendar years 1973, 1974, 1975 and 1976: 1973
1974
1975
1976
Bank Deposits
Benton Banking Co.
Acct. No. 030-029-2
$81,423.79
$66,061.92
$41,421.18
$ 2,700.00
Acct. No. 01-000014-9
1,580.50
14,847.31
13,650.02
1,103.78
Acct. No. 032-770-0
500.00
39,170.86
Acct. No. 033-213-5
34,957.22
Cleveland Bank and Trust
Acct. No. 64-0012218
1,105.21
2,372.76
Total Bank Deposits
$84,109.50
$83,281.99
$55,571.20
$ 77,931.86
Cash Expenditures
Loan Payments
$16,963.04
$64,330.07
$19,913.38
$ 73,354.13
Cars and Other
Vehicles Purchased
772.35
9,715.22
20,432.42
10,313.00
Real Estate Purchases
7,213.50
5,975.00
800.00
62,350.00
Total Cash Expenditures
$24,948.89
$80,020.29
$41,145.80
$146,017.13
Non-Income Deposits and
Other Non-Income Items
Loan Proceeds Deposited
$45,609.64
$12,000.00
$24,250.00
$ 19,500.00
Bank Transfers
1,700.00
500.00
Basis in Capital Assets
Sold
55,152.34
1,875.00
48,907.47
Section 1202 Deduction
6,917.26
225.00
500.00
Tax Refund Received
1,043.00
792.00
Total Non-Income Items
45,609.64
$75,769.60
$27,893.00
$ 69,699.47
*492 In 1973, total checks were written on petitioners' accounts in the amount of $79,278.37; in 1974, total checks were written in the amount of $67,986.91; and in 1975, total checks were written in the amount of $38,324.19. Checks totaling $6,906.37 were written on the Benton Banking Co. Acct. No. 030-029-2 in 1976 checks totaling $29,933.02 were written on the Benton Banking Co. Acct. No. 033-213-5 in 1976. In 1976, checks in the total amount of $39,320.99 were written on the Benton Banking Co. Acct. No. 032-770-0. During all the years here involved, Mr. Allen would give Mrs. Allen papers to sign and she would sign them. She did not read the papers or question Mr. Allen about them and did not discuss any business with Mr. Allen. Mrs. Allen was often asked by her husband to sign papers at the bank or at an attorney's office. She would go to the bank or the attorney's office to sign the papers, but she would not inquire as to the nature of the papers she was signing. Mrs. Allen was aware that Mr. Allen often borrowed money from Benton Banking Co. and that many of the documents she was signing at the bank were notes. She would go to the bank and sign the note at Mr. Allen's request. *493 Generally, when she went to the bank the note would be ready for her signature but she would not read it before signing it. Generally, Mrs. Allen was not present when her husband discussed the business transaction to which the document she later signed related. Mrs. Allen was a notary public and sometimes Mr. Allen would use her notary seal and sign her name. Mr. Allen, during all the years here in issue, bought and sold cars in his own name and also in Mrs. Allen's name. Mrs. Allen was aware that he bought cars that they would use for a short time and then sell, but was not aware of his buying and selling cars in her name. Mr. Allen was convicted in 1979 of concealing stolen property in connection with certain automobiles, and during the years here in issue he dealt with a number of used car dealers who subsequently were convicted of odometer tampering. Stanley Allen was a carpenter by trade and during 1973 and 1974 received wages as a carpenter. Lydia Allen prepared the joint income tax return filed by Stanley Allen and herself for the year 1973. This return was a Form 1040A and reported salary and wages of $16,581.53. This return was signed by both Mr. and Mrs. Allen. *494 Attached to the return was a Form W-2 from Benton Manufacturing Co., Inc., showing as the employee Lydia D. Allen and reporting total wages of $5,974.01, and several W-2 forms by various employers to Stanley Allen showing total wages in an amount to make up the balance of the $16,581.53 reported on the 1973 return. During all of the years here in issue, except for sometime in 1976 when her second son was born, Lydia Allen was employed as a seamstress by the Benton Manufacturing Co., Inc. Petitioners' 1974 return was prepared by H & R Block in Chattanooga, Tennessee, and signed by each of them. On this return, salary and wages totaling $17,902 and interest income of $163 were reported. No other income was reported on this return. Attached to this return was a W-2 form made out to Lydia D. Allen from Benton Manufacturing Co., Inc., showing total wages paid to her during the year of $6,386.54. Also attached was a Form W-2 of Stanley E. Allen from Marbry and Parker Contractors reporting wages of $11,514.95. Petitioners' 1975 Federal income tax return was filed on Form 1040. Wages in the amount of 7,232.09 were reported on this return and interest income of $521.51 was reported, *495 making total reported income of $7,753.60. Attached was a Form W-2 from Benton Manufacturing Co., Inc., showing Lydia D. Allen as the employee and total wages paid to her of $7,232.09. The interest of $521.51 was shown as being from Benton Banking Co. Mrs. Allen initially told a special agent of respondent that she had made out the 1975 return, but she believes this to have been an error. Mr. Allen told the special agent that either he or Mrs. Allen made out the 1975 return. Both Mr. and Mrs. Allen signed the 1975 return and no signature of a preparer is shown thereon. On petitioners' 1976 tax return, signed by both Mr. and Mrs. Allen and shown as prepared by Ann Caerinee, salary and wages of $826.15 was reported. Attached to the return was a Form W-2 showing wages in this amount as paid by Benton Manufacturing Co., Inc., to Lydia B. Allen. On this return, interest of $455.78 was reported and income other than salary and wages of $8,568.13, making total adjusted gross income as reported of $9,850.06. The house in which petitioners were living during the years 1973, 1974, 1975 and a part of 1976, was built by Stanley Allen. The house measured approximately 24 by 36 feet and *496 was modestly furnished. Lydia Allen's brother, who was an electrician, did the electrical wiring in the house. Stanley Allen paid for the electrial materials, but Mrs. Allen's brother made no charge for the work he did in wiring the house. Mrs. Allen rarely kept more than $10 or $15 cash in her possession. Other than working at her job at Benton Manufacturing Co., Inc., Mrs. Allen spent her time in caring for her home and children. Although she sometimes deposited her salary check in her bank account, generally she would cash it at the grocery store when she was purchasing groceries. Often, she paid for the groceries with part of the proceeds of ther paycheck. She sometimes bought clothing for herself and her children with proceeds of her paycheck, but she rarely bought items other than those she considered essential for either herself or the children. Stanley Allen was short-tempered. At one time he hit Mrs. Allen's brother because her brother had not helped him in a fight with another man. However, Mr. Allen never hit or in any way physically abused Mrs. Allen and never threatened to do so. Mr. Allen never abused or beat his children. However, he did once say to his *497 oldest son that should the son make him mad enough, he might have to kill him. Mr. Allen had the type of personality that liked to control transactions in which he was involved. Several persons interviewed by respondent's agent refused to give information to the agent, at least one of them stating that he was afraid of Stanley Allen. Both Stanley and Lydia Allen were indicted for the years 1973, 1974 and 1975 for violation of section 7206(1) for willfully and knowingly subscribing to a return under penalties of perjury, which was filed with the Internal Revenue Service, which they did not believe to be true and correct as to every material matter, in that the return reported gross income only from wages or wages and interest and no gross income from any business activity, whereas they well knew and believed that they had received substantial gross receipts from the sale of automobiles. The indictment against Lydia Allen was dismissed, and Stanley Allen pleaded guilty to all three counts of the indictment. On August 16, 1984, Stanley Allen was murdered in an ambush-type slaying. During the years in issue, petitioners purchased property known as Peaceful Valley Farms and it *498 was after this purchase that Stanley Allen opened the account in that name. Also during the years here in issue, petitioners sold the home in which they had been living and Stanley Allen built them a new house on some property which had once been owned by Mrs. Allen's father. During the calendar year 1976, petitioners expended $62,350 in cash for the purchase of real estate. During the years here in issues, petitioners purchased several pieces of real property. Lydia Allen took no part in negotiating for the purchases, but she did sign documents with respect to the purchases which made her aware of the fact that the transaction was a real estate transaction. In late 1975, Stanley Allen opened a used car business under the name Allen Used Cars. He had a used car lot in Chattanooga, Tennessee, from which he operated the business. Lydia Allen occasionally visited her husband's used car lot in Chattanooga, Tennessee, and she was aware of the bank account he opened in the name of Allen Used Cars. The investigation of petitioners' tax returns by a special agent began in November 1976. On November 9, 1976, the special agent telephoned Mr. Allen to inform him that the investigation *499 was beginning and to make an appointment to see him. The special agent first interviewed Mr. Allen on November 10, 1976. When the special agent asked Mr. Allen if he had any unreported income for 1973, 1974 and 1975, Mr. Allen replied, "No, not on record." Mr. Allen did not keep records of his transactions of buying and selling automobiles during the years 1973, 1974 and 1975. After he was contacted by the special agent, but before meeting with the special agent, Mr. Allen withdrew $10,000 from his savings account and he explained to the special agent that he withdrew this amount because he knew the Internal Revenue Service would get the money if he left it in the bank. After meeting with the special agent in November 1976, Mr. Allen burned all his 1976 canceled checks and bank statements and all remaining records he had for years prior to 1976. Petitioners rented a safe deposit box at Benton Banking Co. on March 29, 1976. On that date, both Mr. and Mrs. Allen entered the safe deposit box but all entries after that date were made by Mr. Allen. Stanley and Lydia Allen were marred on September 15, 1962. Their first child was born in 1968 and the younger child was born in 1976. *500 On their 1976 income tax return, petitioners reported a loss from Allen Used Cars on a Schedule C, Profit or (Loss) From Business or Profession, attached to their return of $4,306.20. On another Schedule C attached to their return, showing the business as "carpenter," they reported income of $5,374.33. The income other than wages, dividends and interest reported consisted of $7,000 of short-term capital gain and $1,000 of long-term capital gain reduced by $500, with a net of $7,500, plus the business income from the carpentry business less the reported loss on the used car business, making a net of $8,568.13. Petitioners had unreported income for the calendar year 1976 in the amount of $144,525.74. Respondent in his notices of deficiency computed petitioners' taxable income for each of the years here in issue by the bank deposits plus cash expenditures less non-income deposits and allowable adjustments to gross income to arrive at gross income. From this was deducted the gross income reported on their return for each year, leaving the computation of unreported income. In the notices of deficiency respondent determined an addition to tax under section 6653(b) for each year. *501 OPINION Section 6653(b) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In this case, petitioners have conceded, with respect to Stanley Allen, that a part of the underpayment in tax for each of the years 1973, 1974 and 1975 was due to fraud. Although fraud was not conceded with respect to the year 1976, respondent in his brief requested as an ultimate fact under the designation 81 that the Court find that "Part of the underpayment of tax for 1976 is due to fraud with intent to evade tax by petitioner Stanley E. Allen." Petitioners in their reply brief state: Petitioners have no objections to paragraph 81 if it is amended to include the following additional facts: However, the underpayment of tax for 1976 is due in no part to fraud with intent to evade tax by petitioner Lydia Allen. It is therefore not clear whether in fact petitioners are still contesting fraud with respect to Stanley E. Allen for the year 1976. However, since the burden to *502 establish fraud is on respondent, and he must establish that a part of an underpayment is due to fraud by clear and convincing evidence, we will review the evidence in this case and determine on that basis the issue with respect to fraud for the year 1976. The record in this case shows substantial understatements of taxable income and of the tax due thereon, not only for the year 1976 but for the three prior years. While the mere omission of income in and of itself is not sufficient to warrant a finding of fraud, refeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income is a basis for determining fraud. Anderson v. Commissioner,250 F.2d 242, 249-250 (5th Cir. 1957), affg. in this respect a Memorandum Opinion of this Court. "Consistent and substantial understatement of income is by itself strong evidence of fraud." Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962). As the circuit court further pointed out in the Merritt case, when proof of consistent and substantial *503 understatement of income is coupled with the showing that records are incomplete and inaccurate and that the taxpayer did not supply his bookkeeper with the data necessary for maintaining accurate records, the evidence is sufficient to warrant a finding of fraud. In this case we not only have substantial understatements of income for a number of years but also the destruction of records by Mr. Allen and an attempt by him to conceal income by cash transactions. In fact, petitioner's statement to the special agent that he had no income "on the record" which was not reported was tantamount to an admission of an attempt to conceal income. The record in this case in its entirety amply supports a finding that a part of the underpayment of tax by Stanley E. Allen for the year 1976 was due to fraud with intent to evade tax. Respondent has conceded that there is no addition to tax for fraud with respect to Lydia Allen and on the basis of this concession we so hold. Lydia Allen first argues that she should be relieved of the deficiencies in this case under the provision of section 6013(e) of the Internal Revenue Code as amended by the Tax Reform Act of 1984, Pub. *504 L. 98-369, sec. 424(a), 98 Stat. 801 (1981-3 C.B. (Vol.1) 309). [3]Section 6013(e) provides that a spouse is relieved of liability under regulations prescribed by the Commissioner where a joint return has been made for a taxable year and on that return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, if the other spouse establishes that in signing the return she did not know, and had no reason to know, that there was such substantial understatement, and taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax attributable to such substantial understatement. *505 There is no question in this case that there was a substantial understatement of tax attributable to grossly erroneous items. This has been established by the stipulated facts. There is no question involved in this case of any claimed deductions which were disallowed. However, there are grossly erroneous items, since grossly erroneous items are defined in part to mean any item of gross income attributable to the other spouse which is omitted from gross income. Also there is no question that there is a substantial understatement of tax, since substantial understatement means any understatement of tax which exceeds $500. The only issue here is whether Mrs. Allen knew, or had reason to know, of the substantial understatement and whether it would be inequitable to hold her liable for the tax. It is incumbent upon Mrs. Allen to establish that she did not know, and had no reason to know, of the substantial understatement and that it would be inequitable to hold her liable for the tax. Adams v. Commissioner,60 T.C. 300, 303 (1973). The record in this case is not even clear that Mrs. Allen did not know of the omission of income as distinguished from the fact of *506 the taxability of that income. She stated that she knew that Mr. Allen bought a number of cars that they would use for a short time and then Mr. Allen would sell them. She stated she had to have a car to drive to work and the inference is clear that he also had a car and that they used a number of different cars in any one year. She stated that she thought the notes she signed regularly at the Benton Banking Co. were for borrowings to buy cars and that the notes would be repaid when the cars were sold. Although denying that she knew anything about Mr. Allen's financial transactions, she stated several times that she thought the cars were sold at a loss. In any event, it is clear that she knew that Mr. Allen did buy and sell cars, even though she did not know the extent of his activities. Certainly she knew he had receipts from the sale of the cars and should have been alerted to the fact that at least some of the sales resulted in gain since she was aware of the repayment of notes. From Mrs. Allen's testimony as a whole, we conclude that she was stating that she knew of Mr. Allen's purchase and sale of cars but did not know of his buying and selling cars other than those that *507 they used for a short while during the years 1973 through 1975 before he opened the Allen Used Cars business. It is clear that Mrs. Allen did know of receipts from the sale of cars that she and Mr. Allen had used for a short while. At one juncture she said she assumed they were sold at a loss. However, this does not coincide with her testimony that she did not know about Mr. Allen's business transactions. In any event, Mr. Allen knew that Mr. Allen had receipts from the sale of cars that might result in gain. At the most, all she did not know was that these sales transactions should have been shown on their tax returns, and if the receipts from the sales exceeded the cost or basis of the property sold, the gain should be reported as income. The cases hold that a spouse claiming to be relieved from liability for omission of income must be unaware of the circumstances that gave rise to the omission and not merely of the tax consequences. Smith v. Commissioner,70 T.C. 651, 672-673 (1978); Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975); *508 McCoy v. Commissioner,57 T.C. 732 (1972). Since it is clear that Mrs. Allen knew of receipts from the sale of cars, she did know, to some extent, of the omitted income. However, the record is even clearer that Mrs. Allen had reason to know of the omission from income. She was certainly aware of the amount of wages which she and Mr. Allen received. She wrote most of the checks on the bank accounts maintained primarily in her name and had to be aware that these checks were for total amounts far in excess of the total wages she and Mr. Allen received, which was most of the income reported on their tax returns. She also made out deposit slips and was aware of deposits that did not come from their wages. She attempted to explain why this knowledge did not alert her to omissions of income from their tax returns by stating that she thought the deposits came from amounts borrowed by Mr. Allen from the bank. However, if she thought the deposits came from borrowed amounts, how did she think the loans were repaid if not from receipts from the sale of cars. She stated many times that she never questioned her husband about business affairs. However, available to her was *509 information that clearly would suggest to her that income was being omitted from their tax returns. Based on the record as a whole, we conclude that Mrs. Allen did have reason to know of the substantial understatement of tax and therefore is not entitled to relief under section 6013(e). Section 6013(e), prior to its amendment in 1984, specifically referred to consideration of whether a spouse claiming relief from tax did significantly benefit from the omission from income. The present law does not contain a similar provision. However, it does state that a spouse may be relieved from liability if taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for the deficiency. In our view, it would not be inequitable to hold a spouse liable for the deficiency if the spouse substantially benefited from the omitted income. Here, the record shows that a substantial amount of real property was purchased with some of the omitted income. Except that the record shows that Mrs. Allen at the time of trial was still living in the house built by Mr. Allen in 1975 *510 and 1976, it does not show what happened to the other real property bought with omitted income. A statement was made that there was no plan to have any formal probate of Mr. Allen's estate. Since there is no showing of disposition of any of this property between 1976 and the date of the trial of this case, it must be presumed that if this property was still owned by the parties at the date of Mr. Allen's death, it was either in Mrs. Allen's name or owned by them in a form to cause it to become Mrs. Allen's by operation of Law. In any event, the burden is on Mrs. Allen to show that she did not substantially benefit from the omitted income. The absence of any showing in this record of the disposition of the various properties bought with the omitted income causes petitioner to have failed to carry her burden of showing that it would be inequitable to hold her liable for the deficiencies. We therefore hold that Mrs. Allen is not entitled to be relieved of the deficiencies in this case under section 6013(e). Petitioner cites a number of cases holding a spouse to be entitled to relief under section 6013(e), but all of these cases are distinguishable on their facts from the present *511 case. Petitioner contends that she signed the joint returns for the years 1973, 1974, 1975 and 1976 under duress and therefore the returns should not be considered as joint returns, thereby causing her not to be liable for the deficiencies. Duress may exist by mental intimidation as well as physical fear; see Brown v. Commissioner,51 T.C. 116 (1968). In the Brown case we pointed out that the standards for determining whether the signing of a return was under duress is (1) whether the taxpayer was unable to resist the demands to sign the returns, and (2) whether she would have refused to sign the returns except for the constraint applied to her will. We stated in that case that the modern standard for duress is whether the pressures applied did in fact so far affect the individual concerned as to deprive her of contractual volition. In the Brown case we quoted the statement from Furnish v. Commissioner,262 F.2d 727, 733 (9th Cir. 1958), affg. in part and remanding in part 29 T.C. 279 (1957): "Duress" may exist not only when a *512 gun is held to one's head while a signature is being subscribed to a document. A long continued course of mental intimidation can be equally as effective, and perhaps more so, in constituting duress. * * * Judged by the standards set forth in the Brown case and cases cited therein, we find no duress to have been established in the instant case. The record is clear that petitioner did not cross her husband but let him direct her activities in most regards. However, there is no showing in this record that Mr. Allen ever physically abused her or threatened her or even insisted that she follow his directions. It was her determination not to question her husband but to do as he asked. Furthermore, it is clear that Mrs. Allen has not shown that she would not have signed the returns except for Mr. Allen's insistence. She actually prepared one of the returns. Her income was reported on the return for each year involved. She filed no separate return. Had she not signed the joint return, she would have been obligated to file a separate return. Mrs. Allen's claim of innocent spouse is, in our view, inconsistent with her claim of duress. She claims she did not know of the omitted *513 income. We have concluded that she did know of the income. However, she has totally failed to explain why she would have had any hesitancy to sign the joint returns if she did not know that the joint income was not properly reported on them. From the record as a whole, we conclude that she willingly singed the joint returns of her own volition for each of the years here in issue. Therefore, she did not sign these returns under duress and each of them is a joint return. Petitioners' contention that the statute of limitations bars assessment of tax against Stanley E. Allen is without merit. Section 6501(c)(1) provides that in the case of a false or fraudulent return with intent to evade tax, the tax may be assessed at any time. For the same reasons we have concluded that a part of the underpayment of tax for 1976 was due to fraud by Stanley E. Allen, we conclude that the statute of limitations does not bar the assessment and collection of the deficiency for that year. Petitioners' final contention is that since it has not been shown that there was fraud on the part of Lydia Allen in filing returns for any of the years here in issue, the statute of limitations bars assessment *514 of the deficiencies against her. Petitioners rely in this regard on Rodney v. Commissioner,53 T.C. 287 (1969). Petitioners misconstrue the holding in the Rodney case. That case held that a conviction of tax evasion of a husband did not collaterally estop his wife from denying fraud or relieve respondent from proving fraud on her part to hold her liable for the addition to tax for fraud. Section 6653(b)(4) now so provides. Section 6501(c)(1) provides that in the case of a false or fraudulent return with intent to evade tax, the tax may be assessed, or a proceeding in court for collection of the tax begun without assessment, at any time. It is the false or fraudulent return that keeps the statute open. Here, the Commissioner has established in 1976, and petitioners have conceded for the years 1973, 1974 and 1975, that the returns were false and fraudulent with intent to evade tax with respect to Stanley E. Allen. Since the returns were joint returns, the returns were fraudulent and the statute is open for assessment of the deficiencies against Lydia Allen even *515 though, under the provisions of section 6653(b)(4), she is not liable for the addition to tax under section 6653(b) since it was stipulated that no part of the underpayment of tax for any year here in issue is due to the fraud of Lydia Allen. Therefore, the statute of limitations does not bar the assessment of the deficiencies against Mrs. Allen in any of the years here in issue. Ballard v. Commissioner,740 F.2d 659, 662-663 (8th Cir. 1984); Vannaman v. Commissioner,54 T.C. 1011 (1970). Decisions will be entered for the respondent for the deficiencies and additions to tax with respect to Stanley E. Allen and for the deficiencies only with respect to Lydia Allen.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue. ↩
2. At the beginning of the trial, the parties represented to the Court, and the fact was subsequently stipulated, that Stanley E. Allen died on August 16, 1984. Counsel for petitioners stated that Mr. Allen did not leave a will and that at the present time there was no intention to probate or make any sort of formal administration of Mr. Allen's estate in the State of Tennessee. Counsel for petitioners also stated that the heirs of Stanley E. Allen were the co-petitioner, Lydia Allen, whose address is Box 182, Ocoee, Tennessee 37361, and the two children of Stanley E. Allen and Lydia Allen, Stanley Allen, Jr., age 16, and Shaun C. Allen, age 7, whose mailing address is the same as their mother's. Counsel further stated that the mother, Lydia Allen, was both the natural and legal guardian of the children. Although there was to be no formal administration of Mr. Allen's estate, counsel for Mrs. Allen represented to the Court that he was representing both the interests of Stanley E. Allen as well as of Mrs. Allen and stipulated to the fraud addition being appropriate with respect to Stanley E. Allen for the years 1973, 1974 and 1975, as well as the figures from which the income and deficiencies as shown in the notices of deficiency for all years here in issue can be computed.↩
3. Section 6013(e), as amended by the Tax Reform Act of 1984, provides as follows: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In general.--Under regulations prescribed by the Secretary, if-- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. (2) Grossly erroneous items.--For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse-- (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law. (3) Substantial understatement.--For purposes of this subsection, the term "substantial understatement" means any understatement (as defined in section 6661(b)(2)(A)) which exceeds $500. (4) Understatement must exceed specified percentage of spouse's income.-- (A) Adjusted gross income of $20,000 or less.--If the spouse's adjusted gross income for the preadjustment year is $20,000 or less, this subsection shall apply only if the liability described in paragraph (1) is greater than 10 percent of such adjusted gross income. (B) Adjusted gross income of more than $20,000.--If the spouse's adjusted gross income for the preadjustment year is more than $20,000, subparagraph (A) shall be applied by substituting "25 percent" for "10 percent." (C) Preadjustment year.--for purposes of this paragraph, the term "preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed.↩