CAROL L. BRAILSFORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brailsford v. Commissioner
Docket No. 8447-89
United States Tax Court
T.C. Memo 1991-639; 1991 Tax Ct. Memo LEXIS 687; 62 T.C.M. (CCH) 1602; T.C.M. (RIA) 91639; December 23, 1991, Filed *687 An appropriate order and decision will be entered.
Gerald A. Kafka and Rita A. Cavanagh, for the petitioner. Melvin E. Lefkowitz, Barbara B. Walker, and Thomas D. Moffitt, for the respondent. PARKER, Judge. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION Petitioner has filed a Motion for Award of Reasonable Litigation Costs in the amount of $ 36,870 pursuant to section 7430 and Rule 231. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure. The Court has concluded that a hearing on the motion is unnecessary. Rule 232(a)(3). The issue for consideration is whether respondent's position in this civil proceeding was substantially justified within the meaning of section 7430(c)(4)(A)(i). We conclude that it was. FINDINGS OF FACT [1]
*688 By statutory notice of deficiency dated January 27, 1989, respondent determined deficiencies in the Federal income tax of petitioner Carol L. Brailsford (petitioner) and her former husband, Lawrence J. Brailsford (Brailsford), in the amounts of $ 133,128.30 and $ 124,598.22 for the taxable years 1979 and 1980, respectively. Respondent also determined additions to tax under section 6653(b) for fraud on the part of Brailsford only. On April 27, 1989, petitioner timely filed a petition with this Court. At the time the petition was filed, petitioner resided in Washington, D.C. Petitioner's original petition placed into dispute the full amount of the deficiency for each year. That original petition contained two assignments of error: (1) increasing the taxpayers' taxable income by "unreported income" and "false deductions and credits" attributable to Brailsford totaling $ 249,510.57 for 1979, and $ 164,794.25 for 1980, and (2) alternatively, "if any of the amount of unreported income and false deductions and credits is properly included in the Taxpayers' taxable income," then erroneously failing to relieve petitioner of liability under section 6013(e). That original petition did *689 not challenge the fraud on the part of Brailsford nor raise any statute of limitations issue. The only issues raised were the amount of the deficiencies and petitioner's status as an innocent spouse under section 6013(e). In June of 1989, petitioner's first counsel, Robert W. Annand (Annand), met for the first time with respondent's appeals officer, Yale Wiesberg (Wiesberg). They discussed that the tax years at issue were only open because of the fraud committed by Brailsford. [2] Brailsford had been the subject of a grand jury investigation and had been indicted for two counts of income tax evasion under section 7201 for the years 1979 and 1980. He had pleaded guilty to filing a false return under section 7206(1) for the taxable year 1980 and had served one year in a Federal prison. Annand requested that Wiesberg obtain the grand jury documents offered against Brailsford, believing they would demonstrate petitioner's lack of benefit from or involvement in Brailsford's business activities. Wiesberg declined, stating that it was petitioner's responsibility to obtain evidence to prove her case. However, Annand did not pursue this matter, and subsequent discussions with Wiesberg *690 focused on the innocent spouse issue. *691 After the initial meeting in June of 1989, Wiesberg tried unsuccessfully for several months to reach Annand to continue discussions about petitioner's case. On January 30, 1990, Annand and Wiesberg finally met to discuss petitioner's innocent spouse claim. Annand stated that an analysis of one of Brailsford's business bank accounts demonstrated that petitioner did not benefit from the unreported income and that she qualified for innocent spouse treatment. Wiesberg explained that benefit was only one factor to be considered in granting innocent spouse relief. On February 6, and February 16, 1990, Annand sent letters to Wiesberg, describing petitioner's lifestyle during the years at issue and her lack of knowledge of Brailsford's business ventures. Annand explained that petitioner had not lived extravagantly during her marriage to Brailsford and had not benefited from his unreported income. Therefore, Annand concluded that these facts further bolstered his position that petitioner satisfied the requirements for innocent spouse treatment. He promised that documents supporting this position as well as petitioner's affidavit would be forthcoming. From February to June of 1990, *692 Wiesberg once again tried numerous times to contact Annand. By Order dated June 1, 1990, this Court calendared petitioner's case for trial during the Washington, D.C. trial session, commencing November 5, 1990. Upon receipt of this Order, Karen E. Chandler (Chandler), respondent's trial counsel, discussed petitioner's case with Wiesberg. He advised her that he believed the case could be settled but that Annand had failed to provide him with requested documents and was not returning his calls. Chandler advised Wiesberg to continue working toward a settlement. On June 11, 1990, Annand returned Wiesberg's calls and promised an affidavit from petitioner as well as a settlement proposal by June 14, 1990. When Wiesberg did not hear from Annand, he called Annand on June 29, 1990, and left a message on his answering machine advising him that the case would be transferred to a District Counsel attorney if a settlement offer were not submitted. On July 6, 1990, Annand proposed a settlement of $ 3,500 for 1979 and $ 3,500 for 1980, based on petitioner's ability to pay. Wiesberg responded that he was not authorized to settle a case based upon ability to pay, but rather on the hazards *693 of litigation. Wiesberg thus rejected Annand's offer. At that time, Annand stated that he did not have any expertise in tax litigation and would recommend that petitioner retain other counsel. Since Wiesberg's settlement efforts were proving ineffective, Chandler sent a letter to Annand requesting informal discovery on both the amount of the deficiencies and the innocent spouse issue. She arranged a meeting for July 25, 1990. At that meeting, Annand did not provide Chandler with the requested documents, nor did he provide any new information on either of the issues of the case. During this discussion, however, Annand stated that he believed petitioner would litigate only the innocent spouse issue. After this meeting, Chandler also attempted to keep in contact with Annand to pursue a settlement, but he never returned her calls or responded to her requests for discovery. About a month passed, with no further action by petitioner's counsel. On August 29, 1990, Wiesberg received a letter from Annand stating that Gerald A. Kafka (Kafka) would be representing petitioner. On August 31, 1990, Kafka filed his entry of appearance in the case with this Court. Chandler contacted Kafka *694 and told him about Annand's written settlement offer and that Annand had indicated he would pursue only the innocent spouse issue. She asked Kafka to confirm this position. She again made the discovery requests with which Annand had not complied. Kafka advised that he would contact Chandler after he had reviewed Annand's settlement proposal and met with petitioner. On September 11, 1990, petitioner's case was reassigned from Chandler to another trial counsel, Barbara B. Walker (Walker). [3] On September 14, 1990, Walker telephoned Kafka, told him that the case had been reassigned to her, and asked him if Annand's representation about litigating only the innocent spouse issue was correct. Kafka was noncommittal. On September 21, 1990, Walker met with Kafka to discuss settlement possibilities. Kafka agreed to bring petitioner to respondent's offices for an informal interview to permit respondent's counsel and the appeals officer to assess her credibility. At that meeting on September 21, 1990, Kafka briefly mentioned the statute of limitations and fraud. This was the first time either the statute of limitations or fraud had been mentioned by petitioner or her representatives *695 as a possible issue in this case. On September 28, 1990, Walker met with Kafka, Kafka's associate Rita A. Cavanagh (Cavanagh), Wiesberg, District Counsel Melvin Lefkowitz (Lefkowitz), and petitioner. Over the course of one and one-half hours, petitioner provided and clarified information regarding her lifestyle and lack of knowledge of her former husband's business activities. Kafka stated that petitioner was unaware of any settlement offers made by Annand and that petitioner also had had difficulty with Annand's not returning her calls. As a result of Kafka's raising the statute of limitations matter on September 21, 1990, respondent's counsel decided that it would be necessary to obtain the evidence used to establish that Brailsford had committed fraud. *696 She interviewed several persons, sought information from several sources, and initiated an effort to obtain the grand jury materials. On October 3, 1990, respondent's counsel filed a request with the U.S. Attorney's Office for an Order under Rule 6(e), Federal Rules of Criminal Procedure (the Rule 6(e) Order). This Rule 6(e) Order would allow respondent's counsel to gain access to the evidence that the Government had presented to the grand jury to establish that Brailsford had fraudulently understated his income in 1979 and 1980. Walker had asked Kafka to join in the request for the Rule 6(e) Order, but he would join only if respondent would agree to concede all issues if the materials used to indict Brailsford showed that petitioner was not involved. Respondent's counsel determined that those terms were unacceptable. Rather than join with the Government's motion, Kafka tried unsuccessfully to intervene in order to oppose the action brought on respondent's behalf by the U.S. Attorney's Office. [4]
*697 On October 4, 1990, Walker sent a copy of her request for the Rule 6(e) Order and supporting documents to Kafka. On October 5, 1990, Kafka spoke with respondent's counsel to inquire whether or not petitioner needed to amend her petition to raise the issue of the statute of limitations. Respondent replied that such a defense must be raised in the pleadings. On October 9, 1990, petitioner's counsel filed with this Court a Motion to Amend Petition, raising the affirmative defense of the statute of limitations for the first time. This Court granted petitioner's motion on October 12, 1990. On October 15, 1990, petitioner's counsel filed a motion in limine in the Tax Court to limit respondent's use of the grand jury materials being sought on behalf of respondent. Petitioner complained that respondent's "eleventh hour efforts to obtain certain grand jury materials raises numerous evidentiary issues and will unnecessarily prolong the trial." This Court denied that motion in limine on October 17, 1990. On October 25, 1990, the United States Attorney's Office contacted respondent's counsel to inform her that the United States District Court for the District of Columbia had granted the *698 Rule 6(e) Order. On October 30, 1990, the 29 boxes of grand jury materials were located. The following day respondent's counsel located among the grand jury materials the checks the Government used to establish Brailsford's understatement of income in 1979 and 1980 and petitioner's bank and credit card records. While pursuing the Rule 6(e) Order and other trial preparations, respondent's counsel again discussed with petitioner's counsel the possibility of settling the case. On October 18, 1990, petitioner's counsel represented that petitioner was in a precarious financial situation and that he would advise his client to settle only if respondent assisted her in arranging the terms of payment with the Internal Revenue Service Collection Division. Respondent's counsel made arrangements for petitioner to meet a revenue officer to complete financial statements and to provide the documentation necessary for the terms of payment. On October 30, 1990, petitioner and her counsel met with a revenue officer assigned to the Baltimore District Director's office to complete the financial statements. On November 2, 1990, Walker and Kafka reached a settlement agreement, and in a conference *699 telephone call, so advised the Court. The case was called from the trial calendar on November 5, 1990, and recalled on November 12, 1990, for reports to the Court. The Court allowed the parties additional time, to and including December 12, 1990, within which to file their stipulated decision document. That time was later extended to January 11, 1991. On November 6, 1990, respondent's counsel sent a memorandum and supporting documents to the Internal Revenue Service's Baltimore Collection Division office requesting approval of the terms of payment. The Collection Division evaluated petitioner's proposal. The Acting District Director accepted the terms of payment on December 19, 1990. On January 9, 1991, the parties submitted a stipulated decision document reflecting no deficiency for 1979 and a deficiency of $ 15,000 for 1980. The Court adopted and entered that decision as the decision of this Court. Subsequently, petitioner's counsel moved to vacate and set aside that decision in order to move for an award of litigation costs. The motion to vacate was granted February 8, 1991. The parties filed a Stipulation of Settled Issues on February 22, 1991, with petitioner reserving *700 the right to move for an award of litigation costs. The present motion followed. OPINION Petitioner is seeking litigation costs incurred only after August 31, 1990, when her new attorney entered the case. Petitioner contends she has incurred unnecessary litigation costs in order to oppose respondent's "eleventh hour fraud investigation," to perfect her statute of limitations defense, and to substantiate her innocent spouse status, despite previous evidence submitted. Section 7430(a)(2) provides that "the prevailing party" may be awarded reasonable litigation costs incurred in connection with a Tax Court proceeding. To be "the prevailing party," petitioner must establish that: (1) the position of the United States in the proceeding was not substantially justified; (2) she substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; and (3) she had a net worth not in excess of two million dollars at the time the proceeding was commenced. Sec. 7430(c)(4)(A). In addition, she must have "exhausted the administrative remedies available to * * * [her] within the Internal Revenue Service." Sec. 7430(b)(1). *701 Petitioner contends that she met all of the requirements of section 7430. Respondent concedes that petitioner exhausted the administrative remedies available to her. Respondent also concedes that petitioner has substantially prevailed and has satisfied the net worth limitations. However, respondent asserts that respondent's position was substantially justified and that petitioner's claimed litigation costs are unreasonable. If we determine that respondent's position was "substantially justified," it will not be necessary to consider the reasonableness of the litigation costs. Effective for proceedings commencing after November 10, 1988, section 7430(c)(7)(A) provides that the term "position of the United States" means: (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, * * *.
Section 7430(c)(6) defines the term "court proceeding" to mean any civil action brought in, among other courts, the Tax Court. Thus, we must examine the events occurring after the filing of the petition. In the notice of deficiency dated January 27, 1989, respondent determined that petitioner was jointly and severally liable with Brailsford for *702 the deficiencies attributable to unreported income and fraudulent deductions and credits for 1979 and 1980, and that Brailsford was liable for the fraud addition under section 6653(b) for both years. It is well established that the fraud of one spouse will keep the statute of limitations open as to the other spouse who signed a joint return with him. Ballard v. Commissioner, 740 F.2d 659, 662-663 (8th Cir. 1984), affg. a Memorandum Opinion of this Court; Vannaman v. Commissioner, 54 T.C. 1011, 1018 (1970). [5]
In her petition filed April 27, 1989, petitioner made two assignments of error: (1) that the Commissioner's determination of the deficiencies was erroneous, and (2) that the Commissioner erroneously failed to accord her innocent spouse treatment, both of which respondent denied in his answer. Rule 34(b)(4) provides *703 that: The assignments of error shall include issues in respect of which the burden of proof is on the Commissioner. Any issue not raised in the assignment of errors shall be deemed to be conceded. [Emphasis supplied.]
There was no assignment of error as to the fraud determination nor was an affirmative defense of the statute of limitations pleaded (Rule 39), either of which pleadings would have required respondent, in his answer, to have set out -- a clear and concise statement of every ground, together with the facts in support thereof on which the Commissioner relies and has the burden of proof. [Rule 36(b).]
There was nothing in the petition to alert respondent or this Court that either the fraud determination or the statute of limitations was an issue in this proceeding. [6] Petitioner's argument that the petition "generally alleged sufficient facts to put Respondent to its [sic] proof on the fraud issue" is disingenuous, to say the least. *704 Petitioner alleged no facts in support of her claim of error in the deficiency determinations. In regard to her innocent spouse claim, she alleged in her petition that she is divorced from Brailsford and is entitled to relief under the innocent spouse provisions of section 6013(e) because she did not significantly benefit, directly or indirectly, from the unreported income at issue. Respondent's answer, filed June 5, 1989, denied those allegations for lack of present knowledge and information. We will first discuss whether respondent's position in regard to the innocent spouse claim was "substantially justified." To determine whether or not respondent's position was substantially justified, we must consider the reasonableness of that position, based on all of the facts and circumstances, and the legal precedents relating to the case. [7] The basis for respondent's legal position and the manner in which it was maintained are critical inquiries. Wasie v. Commissioner, 86 T.C. 962, 969 (1986). *705 As to the innocent spouse issue, petitioner asserts that respondent belatedly conceded the merits of her position. It is petitioner's burden to prove that she is entitled to relief under the innocent spouse provision. [8]Sec. 6013(e)(1)(C) and (D); Rule 142(a); Sliwa v. Commissioner, 839 F.2d 602, 608 (9th Cir. 1988); Fox v. Commissioner, 61 T.C. 704, 716 (1974); Adams v. Commissioner, 60 T.C. 300, 303 (1973); see also New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934). Reasonableness of respondent's position turns greatly on when certain facts became known to respondent.[9]Respondent is given a reasonable period of time in which to resolve a factual issue after receiving all relevant information. Sokol v. Commissioner, 92 T.C. 760, 765 n.10 (1989). [10] Furthermore, respondent's loss or concession of a case does not establish an unreasonable position. Phillips v. Commissioner, 271 U.S. App. D.C. 265, 851 F.2d 1492, 1499 (D.C. Cir. 1988); Sokol v. Commissioner, 92 T.C. at 767. *706 For long periods of time, petitioner's first counsel did not maintain adequate contact with the appeals officer or respondent's counsel and was not forthcoming with necessary information and documents. Annand's correspondence set forth how the provisions of the innocent spouse defense applied to petitioner's situation. However, those letters provided no independent evidence to support petitioner's assertions or to demonstrate to respondent that petitioner would be able to meet her burden of proof with respect to this issue. Any delay from June of 1989, when Annand first met with the appeals officer, through the end of August 1990, when petitioner's new counsel entered the case, was caused by Annand's repeated failure to return telephone calls and his failure to produce requested documents and the affidavit from petitioner that he had promised to supply. Three weeks after petitioner's new counsel entered the case, he met with respondent's counsel on September 21, 1990, and agreed to produce petitioner so that respondent's counsel and the appeals officer could assess her credibility. Respondent did not have an opportunity to interview petitioner to assess her knowledge and credibility *707 until September 28, 1990. The case was reported to the Court as settled on November 2, 1990. Settlement was reached within 35 days once petitioner's new counsel presented requested information and made petitioner available for informal discussions. Any delays after November 2, 1990, were necessitated by the special arrangements for payment that petitioner was seeking. Thus, respondent did not unreasonably delay concession of the merits of petitioner's innocent spouse issue. See and compare Sliwa v. Commissioner, 839 F.2d at 609 (reasonable for concession not to have been made until the Internal Revenue Service had opportunity to review records obtained some six months prior); Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988), affg. a Memorandum Opinion of this Court (concession some six months after answer filed, after respondent had an opportunity to verify information, held reasonable); Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984) (11-month delay in conceding case not unreasonable); White v. United States, 740 F.2d 836, 842 (11th Cir. 1984) (Government's concession of issue three *708 months after issue raised was reasonable).[11]
The Court finds that respondent concluded settlement negotiations and settled the case rather expeditiously, particularly in view of the new issues that petitioner belatedly raised. Petitioner also contends that respondent's course of conduct was not substantially justified because respondent did not timely conduct a pretrial investigation to determine whether sufficient evidence existed to prove the fraud committed by petitioner's former husband. Most of petitioner's complaints are directed *709 against what she calls respondent's "eleventh hour fraud investigation." However, neither the fraud determination nor any statute of limitations defense was at issue in the case until the eleventh hour. Petitioner's first counsel did not plead the statute of limitations in the original petition. The statute of limitations is an affirmative defense that must be pleaded or it is waived. Rules 34(b)(4), 39, 142(a); Pesch v. Commissioner, 78 T.C. 100, 136 (1982); Long v. Commissioner, 71 T.C. 1, 5-6 (1978); Groetzinger v. Commissioner, 69 T.C. 309, 312 (1977). In the initial settlement discussion, Wiesberg mentioned that the years were open only because of Brailsford's fraud, but Annand either did not understand or failed to act. See supra note 2. Petitioner's argument that respondent "did not disclose or acknowledge his duty to prove fraud" is disingenuous. The facts as to the statute of limitations were equally available to both parties. Respondent had no duty to discuss or prove an issue that petitioner had not raised, either directly (an assignment of error as to the fraud determination) or indirectly (pleading *710 the statute of limitations). It was not until September 21, 1990, that petitioner's new counsel mentioned the issue of the expiration of the statute of limitations for the first time and not until October 9, 1990, that he sought to amend the petition to bring this issue before the Court. The Court granted that motion, possibly improvidently, on October 12, 1990. [12]
The statute of limitations is an affirmative defense. The burden of pleading and proving that an assessment is barred by the general limitations period of three years is on *711 the party raising the issue. [13] Only when the taxpayer has presented pleadings and proof establishing a prima facie case that assessment is barred does the burden of going forward with the evidence shift to the respondent to plead and prove an exception to the general period. Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Therefore, petitioner's suggestion that, throughout the case, respondent was somehow furtive in not disclosing or acknowledging his duty to prove fraud is meritless. Petitioner's reliance upon Don Casey Co. v. Commissioner, 87 T.C. 847 (1986), and Rutana v. Commissioner, 88 T.C. 1329 (1987), is misplaced. In those cases fraud was at issue from the outset, and both cases went to trial. In both instances, respondent failed to meet his burden of proving fraud. This Court, under the facts and circumstances in both cases, held that respondent should not have pursued *712 litigation if he did not have "a reasonable basis for believing that he could prove fraud by clear and convincing evidence." Don Casey Co. v. Commissioner, 87 T.C. at 862; Rutana v. Commissioner, 88 T.C. at 1337-1338. We awarded reasonable litigation costs to taxpayers in both cases. Here, having raised the statute of limitations issue at the last minute and hence requiring respondent, for the first time, to shoulder the heavy burden of proving fraud, petitioner should not assume that respondent would have failed to sustain his burden had the case proceeded to trial. [14] The Court will not so assume. *713 We conclude that respondent's course of conduct in regard to the fraud investigation was entirely reasonable. Petitioner's complaints are not well taken. Therefore, we conclude that respondent's position in this case was substantially justified. For the above reasons, petitioner's motion for an award of litigation costs is denied. An appropriate order and decision will be entered.
Footnotes
1. The facts are based upon the pleadings (petition, answer and amended petition), petitioner's motion for award of reasonable litigation costs and the exhibits attached thereto, the affidavits of Robert W. Annand, Carol Ghent (formerly Brailsford), Gerald A. Kafka and Rita A. Cavanagh attached to that motion, respondent's notice of objection in opposition to petitioner's motion and the affidavits of Yale Wiesberg, Karen E. Chandler, and Barbara B. Walker attached thereto, and respondent's memorandum brief in opposition to petitioner's motion.↩
2. The Court does not read Annand's statement in paragraph 7 of his affidavit as denying any discussion of fraud keeping the years open. Annand's statement, phrased more as a legal argument than a statement of fact, reads as follows: During my conferences with Mr. Weisberg [sic], he did not disclose to, or otherwise discuss with, me that the statute of limitations during which assertion of the proposed deficiencies could be made had run against Ms. Ghent [petitioner] for both taxable years absent clear and convincing evidence by the Internal Revenue Service of fraud committed by Mr. Brailsford.
Annand's complaint seems to be that Wiesberg did not explain the legal significance of Brailsford's fraud. Annand does not seem to understand that in the case of fraud there is no statute of limitations "to run" and the tax can be assessed "at any time." Sec. 6501(c)(1) and (2). He apparently thinks Wiesberg should have explained to him the burden of proof in a civil fraud case. Sec. 7454(a); Rule 142(b)↩. In any event, even if fraud had not been mentioned at all by Wiesberg, it was the responsibility of petitioner's attorney to investigate the facts of her case and the applicable law.
3. Since the case had effectively been transferred to District Counsel's office for trial preparation, Wiesberg submitted a Supporting Statement to the Associate Chief of Appeals on September 17, 1990, stating that the parties were unable to reach a settlement.↩
4. Under Rule 6(e)(3)(D) of the Federal Rules of Criminal Procedure, a petition requesting an order for disclosure of grand jury materials shall be filed in the district where the grand jury convened. Such a petition and the hearing to determine whether an Order releasing the requested information will be granted or denied may be ex parte when the Government seeks the materials. It is within the district court's discretion to decide if a proceeding will be ex parte and whether certain parties should receive notice and be allowed to intervene. This decision is based upon the circumstances of the particular case. 18 U.S.C. Rule 6↩ (1988), Notes of Advisory Committee on Rules discussing 1983 Amendment.
5. See also Allen v. Commissioner, T.C. Memo 1986-125, 1986 T.C. Memo 125, 51 T.C.M. (CCH) 728↩, 735, T.C.M. (RIA) 86,125 at 532.
6. Paragraph 5(b) of the petition mentions Brailsford's fraud as part of petitioner's statement of facts in support of her innocent spouse claim, but this cannot, even under the most liberal reading of the petition, be read as placing either the fraud determination or the statute of limitations at issue. This is not an instance of "inartful" pleading, but a total failure to plead.↩
7. This Court and other courts have held that the "substantially justified" standard is not a departure from the "reasonable" standard. Sokol v. Commissioner, 92 T.C. 760, 763-764 n.7 (1989); Sher v. Commissioner, 89 T.C. 79, 84 (1987) and cases cited therein, affd. 861 F.2d 131 (5th Cir. 1988); Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987) and cases cited therein; Don Casey Co. v. Commissioner, 87 T.C. 847, 857-861 (1986) and cases collated at 858. See also United States for Heydt v. Citizens State Bank, 668 F.2d 444, 447 (8th Cir. 1982)["The test of whether or not a Government action is substantially justified is essentially one of reasonableness."] However, the United States Court of Appeals for the District of Columbia Circuit, to which an appeal of this case would lie, has reasoned that a more stringent approach than one of reasonableness should be taken in evaluating the Government's position. See, for example, Baker v. Commissioner, 252 U.S. App. D.C. 81, 787 F.2d 637, 643 n.10 (D.C. Cir. 1986); Spencer v. N.L.R.B., 229 U.S. App. D.C. 225, 712 F.2d 539, 558 (D.C. Cir. 1983), cert. denied 466 U.S. 936, 80 L. Ed. 2d 457, 104 S. Ct. 1908 (1984). The Supreme Court, in Pierce v. Underwood, 487 U.S. 552, 563-568, 101 L. Ed. 2d 490, 108 S. Ct. 2541↩ (1988), reviewed the "more stringent" approach and its legislative history. The Supreme Court adopted the "reasonable basis in both law and fact" standard, which we now follow.
8. Under section 6013(e), a taxpayer must meet five prerequisite conditions in order to be considered an innocent spouse and be granted relief from liability for deficiencies. First, the spouses must have filed a joint return under section 6013↩. Second, there must have been a substantial understatement of tax attributable to the grossly erroneous items of one spouse. Third, the other spouse must establish that he or she did not know and had no reason to know of the substantial understatement. Fourth, considering all of the facts and circumstances, it must be inequitable to hold the other spouse liable for the deficiency attributable to the substantial understatement. Last, the understatement must exceed a specified percentage of the other spouse's preadjustment year adjusted gross income.
9. Lewis v. Commissioner, T.C. Memo 1990-522↩. 10. See also Johnson, v. Commissioner, T.C. Memo 1990-542, 1990 Tax Ct. Memo LEXIS 596, 60 T.C.M. 1028↩, 1030, 1990 T.C. Memo 542 (1990), 59 P-H Memo T.C. par. 90,542 at 2652.
11. After examining all of the facts and circumstances of various cases, this Court has found reasonable the usage of various periods of time by respondent to investigate a case and decide whether to concede. See, for example, Hubscher v. Commissioner, T.C. Memo 1988-428; Coffey v Commissioner, T.C. Memo 1988-78; Shifman v. Commissioner, T.C. Memo 1987-347; Rouffy v. Commissioner, T.C. Memo 1987-5↩.
12. Mindful of the time pressure it was placing on respondent by granting the motion just 24 days before the trial session began, the Court intended to allow both parties additional time to prepare for trial had the case not settled. Hence, the Court denied petitioner's motion in limine in regard to the grand jury materials. The Court should not permit one party to raise new issues at the last minute and then deprive the opposing party of a fair opportunity to meet those issues.↩
13. Goldberg v. Commissioner, T.C. Memo 1984-617↩.
14. As petitioner points out, respondent could not rely on collateral estoppel to establish Brailsford's fraud, since he had pleaded guilty to willfully filing a false return (section 7206(1)) rather than to tax evasion (section 7201). Wright v. Commissioner, 84 T.C. 636↩ (1985). However, that guilty plea is a factor to be considered along with all of the other evidence adduced at trial. That guilty plea would conclusively establish that Brailsford willfully filed a false return and the nature of the falsity (substantial understatement of income). However, the Court will not assume that no other evidence would have been offered at trial. Respondent's trial memorandum listed several witnesses, including Brailsford.