**Robert Randall BAKER, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 85–1199.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1986.

Decided April 4, 1986.

As Amended April 4, 1986.

David Rodney, for appellant.

Bruce Ellisen, Atty., Dept. of Justice, for appellee. Glenn L. Archer, Jr., Asst. Atty. Gen. and Michael L. Paup, were on brief for appellee. Gilbert S. Rothenberg and Roger M. Olsen, Attys., Dept. of Justice, Washington, D.C., also entered appearances for appellee.

Before: ROBINSON, Chief Judge, MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case arose out of alleged deficiencies in the 1979 and 1980 federal income tax paid by appellant Robert Randall Baker. Ultimately, the Commissioner of Internal Revenue (Commissioner) conceded that the opposition of the United States to Baker's Tax Court petition was incorrect. Baker owed no tax, the Commissioner eventually stipulated; instead, he was entitled to a refund for one of the tax years in question. Baker then moved in the Tax Court for an award of $4,236.40 covering his litigation costs, including an attorney's fee. He invoked section 7430 of the Internal Revenue Code, 26 U.S.C. § 7430, which provides for such awards when the taxpayer "has substantially prevailed with respect to the amount in controversy," § 7430(c)(2)(A)(ii) (I), *and* "establishes that the position of the United States in the civil proceeding was unreasonable," § 7430(c)(2)(A)(i).[1]

The Tax Court, without holding a hearing,[2] denied Baker's motion. *Baker v. Commissioner of Internal Revenue*, 83 T.C. 822 (1984). We conclude that the Tax Court gave insufficient consideration to Baker's plea that the concession he sought and eventually achieved with the aid of counsel was unreasonably delayed. Baker cites the earlier concessions his co-workers, apparently identically situated taxpayers, achieved without the aid of counsel. Before Baker retained an attorney, he had called these concessions to the attention of the Internal Revenue Service (IRS) office handling his case. He asserts that the officers involved acted arbitrarily in requiring him to pursue a longer, more arduous and expensive course than the one expeditiously traveled by other taxpayers with indistinguishable cases.

If the IRS officers handling Baker's case indeed acted "in a normal and orderly fashion," 83 T.C. at 830, no cost award would be in order. On the other hand, if they were unreasonably intransigent, an award would be warranted. We are not equipped, from the materials before us, to say which description better fits the case at hand. Nor was the Tax Court positioned to make that judgment. The record, in its current state, does not permit an informed determination as to the quality of the IRS officials' conduct—whether it was "normal and orderly" or intransigent and arbitrary—in relation to the concession eventually made by the Commissioner that there was no deficiency. Whether Baker experienced disadvantageous treatment in comparison to identically situated taxpayers and, if so, why, are fact questions the Tax Court left unexplored. We therefore vacate the judgment of the Tax Court, and remand the case for the factual hearing and attendant discovery[3] necessary to a just adjudication whether the manner in which the IRS processed Baker's petition was unreasonable.

## I. BACKGROUND

In 1979 and 1980, taxpayer Baker worked at the King Faisal Specialist Hospi-

---

**1.** Section 7430 currently contains a sunset provision which states that the section "shall not apply to any proceeding commenced after December 31, 1985." 26 U.S.C. § 7430(f). A bill pending at the time of this opinion would extend section 7430 through December 31, 1989. H.R. 3838, 99th Cong., 1st Sess. § 1315 (1985). That bill adds to the section a provision whereby a portion of costs awarded under section 7430 may be assessed against individual IRS employees for "arbitrary or capricious" behavior. *Id.* at § 1315(b).

**2.** *See* Rule 232(a)(3) of the Tax Court Rules of Practice and Procedure, which provides in relevant part:

A motion for reasonable litigation costs ordinarily will be disposed of without a hearing unless it is clear from the motion and the Commissioner's written response that there is a bona fide factual dispute that cannot be resolved without an evidentiary hearing.

**3.** Rule 70(a)(2) of the Tax Court Rules of Practice and Procedure provides that

[d]iscovery of matters which are relevant only to the issue of a party's entitlement to reasonable litigation costs shall not be commenced, without leave of Court, before a motion for reasonable litigation costs has been noticed for a hearing.

tal and Research Centre (Hospital) in Riyadh, Saudi Arabia. Baker resided in housing leased by the Hospital in an apartment complex called the Sahara Towers. All "Western" employees, Baker included, were required to live in Hospital-provided quarters. Under the custom of the country as well as the Hospital's rules,[4] Baker and his compatriots could reside nowhere else.

For tax years 1979 and 1980, section 911 of the Internal Revenue Code provided an exclusion from gross income for certain income earned by a United States citizen living abroad "who, because of his employment, reside[d] in a camp located in a hardship area" (the "camp exclusion"). Pub.L. 95–615, §§ 202(g)(2), (3), formerly §§ 202(f)(2), (3), Nov. 8, 1978, 92 Stat. 3100, renumbered Pub.L. 96–222, title I, § 108(a)(1)(A), Apr. 1, 1980, 94 Stat. 223. Section 911(c)(1)(B)(iii) defined a "camp" in relevant part as lodging provided by the employer for the convenience of the employer "furnished in a common area (or enclave) which is not available to the public and which normally accommodates 10 or more employees." A Treasury Regulation elaborated that "a cluster of housing units is not a common area or enclave if it is adjacent to or surrounded by substantially similar housing available to the general public." Treas.Reg. § 1.911–1(c)(1), T.D. 7736, 1981–1 C.B. 412, 414.

In September 1982, the IRS conducted in Riyadh audits of selected 1979 and 1980 tax returns, including Baker's. At a meeting with the auditor, Baker received a copy of a report that computed proposed tax deficiencies resulting from a disallowance of the camp exclusion he had claimed. Baker did not qualify for the exclusion, according to the IRS, because the apartment complex to which his employer assigned him was located inside the greater Riyadh city limits

"adjacent to or surrounded by" housing open to the general public. Under the Treasury Regulation cited above, Baker's quarters thus did not fit within the definition of "camp" housing, even though Baker was not allowed to live anywhere else in the city.

In a letter to the tax auditor in Jidda, Saudi Arabia, dated October 15, 1982, Baker protested the decision to disallow the camp exclusion and stated that he wished to make a written appeal. This letter apparently did not reach the addressee, and on October 26 the tax auditor returned the case file to the Foreign Operations District in Washington, D.C., for issuance of a notice of deficiency. Baker next received a formal notice of deficiency, dated December 10, 1982, asserting deficiencies of $655 for 1979 and $2,534 for 1980, based primarily on disallowance of the claimed camp exclusion for those years.[5] An exchange of correspondence followed, in which the IRS provided a written explanation of the adjustments to Baker's returns.

On April 6, 1983, Baker filed a *pro se* petition in the Tax Court for redetermination of the deficiency set forth in the Commissioner's December 10, 1982, notice. Baker requested that trial of his case be held in Cleveland, Ohio, and responsibility for the case was thereupon transferred from the Washington, D.C., to the Cleveland District Counsel Office.

Baker met with an appeals officer in Cleveland in September 1983 to explore the possibility of settlement. At this meeting, he told the appeals officer that "two of his fellow employees in Riyadh had also been assessed deficiencies under the same essential circumstances as he, but both of these cases had been dismissed by the [Washington, D.C.] Appeals Office." Memorandum Supporting Motion for Litigation

---

4. The Hospital's housing assignment system, which allowed Westerners no choice to live in quarters other than those assigned, was in accord with Article 143, Section (a) of Saudi Arabia's *Labor and Workman Law. See* Appendix (App.) at 71.

5. The notice also adjusted Baker's income upward by the fair rental value of the housing provided by his employer, decreased his deduction for excess foreign living expenses, and increased (for depreciation) his deduction ·for rental loss. Additionally, the notice asserted a delinquency penalty for late filing of 1979 and 1980 returns. App. at 14–21.

Costs at 3, Appendix (App.) at 51. The appeals officer "told Mr. Baker to send him more information about this, but he said that it probably would not matter because each case was decided on its own merits." *Id.* Because the record is now barren, we assume for purposes of the instant appeal that no IRS officer in Cleveland checked at this point with IRS personnel outside Cleveland and, in particular, that no inquiry from Cleveland was made to the Foreign Operations District in Washington, D.C., although that is the place to which most cases like Baker's would be dispatched.[6]

In a letter addressed to the Cleveland Appeals Office, dated November 26, 1983, Baker recounted what he had learned by checking with the two King Faisal Hospital co-workers who had been audited in Saudi Arabia at the same time he was and by the same auditor. The auditor had disallowed the camp exclusion in all three cases, but the Washington Appeals Office had allowed the exclusion upon receiving letters from the Hospital's Heads of Personnel and Administrative Services. Baker enclosed identical letters from these officials, along with an additional letter from the Hospital's Housing Services Department confirming his residence in the Sahara Towers during 1979 and 1980. Baker's letter also furnished the names of two officials in the Washington Appeals Office who had been involved with one of the cases the Commissioner had conceded.

The Cleveland Appeals Office received Baker's letter and attachments on December 7 and forwarded them to the Cleveland District Counsel Office, to which the case had been returned for trial preparation. Again, we assume at this junction that no IRS officer in Cleveland so much as picked up the phone to inquire (1) what had been done in Washington, D.C., regarding the King Faisal Hospital workers residing, as Baker was, in housing furnished by the

Hospital, and (2) if concessions were made, why the office in Washington, D.C., had made them. *See supra* note 6.

Having made no headway on his own, Baker retained counsel to represent him in December 1983, and on December 12, the Tax Court notified the parties that the case was set for trial in Cleveland at the session beginning March 5, 1984. Counsel for both parties met on January 12 to discuss a stipulation of facts. Cleveland counsel for the Commissioner was not satisfied with the documents Baker had supplied and requested additional information to back up the claimed camp exclusion, including a map of greater Riyadh, a copy of Baker's employment contract, a narrative description of the taxpayer's living quarters during 1979 and 1980, and narrative descriptions of both the location of the Sahara Towers and the surrounding area as it existed in 1979 and 1980.

Baker provided the requested information except for a description of the area surrounding the Sahara Towers, which he regarded as irrelevant because he could live in no dwelling place other than Sahara Towers. Cleveland counsel for the Commissioner renewed his request for this item. On March 23, 1984, Baker submitted the surrounding area description. A month later, on April 26, the parties filed a stipulation in which the Commissioner acknowledged that all adjustments in the notice of deficiency were incorrect, except for the adjustment allowing increased rental loss deductions.[7]

Baker then requested litigation costs, including a fee for his attorney, under 26 U.S.C. § 7430. A judgment for reasonable litigation costs may be made under that section to a "prevailing party" in a tax proceeding commenced before January 1, 1986. *See supra* note 1. Baker could qualify as a prevailing party if he met two

---

**6.** *See* 83 T.C. at 828 n. 4, 830 n. 7 (Tax Court represented that, because it had denied Baker a hearing, it would view the facts in a manner most favorable to him and resolve all bona fide fact questions in his favor).

**7.** The adjustments for housing as income and excess foreign living expenses were dependent on the camp exclusion, which the Commissioner conced he had incorrectly disallowed. *See* Brief for the Appellee at 11.

tests. One is not in dispute: Baker had "substantially prevailed with respect to the amount in controversy." § 7430(c)(2)(A)(ii) (I). The other test precipitated this appeal. Baker had to show that "the position of the United States in the civil proceeding was unreasonable." § 7430(c)(2)(A)(i). Baker contended that the IRS had acted unreasonably in two principal respects: first, in seeking to apply to him a Treasury Regulation at odds with the statute; and second, in unjustifiably withholding a concession promptly accorded identically situated taxpayers. The Tax Court rejected both of Baker's lines of argument and denied the motion for costs.

First, the Tax Court rejected argument based on positions taken prior to the petition commencing the litigation. Section 7430, the Tax Court held, targets positions taken "in the civil proceeding," not earlier on; the court therefore disregarded Baker's contentions that both the regulation defining a "camp" and the determination of deficiencies were unreasonable. 83 T.C. at 827. Next, the Tax Court held that the Commissioner's starting position in the litigation was reasonable. "[T]he substantive issue under section 911," the court observed, "was one of first impression." *Id.* at 829. In adhering to the regulation's definition of a "camp," the Commissioner was not advancing a position "contrary to any published decision." *Id.*

Finally, the Tax Court turned to Baker's claim that the concession ultimately made in his case had been unreasonably withheld in view of the quicker concessions made to other United States taxpayer employees of the King Faisal Hospital. The Tax Court noted at this point in its opinion that it had determined to deny Baker's request for a hearing. Specifically, the court stated:

"Although there are present some bona fide factual disputes, for purposes of disposition of petitioner's motion for litigation costs, we have resolved them in favor of petitioner." *Id.* at 830 n. 7. Without explaining what the bona fide disputes were, or what facts it had resolved in Baker's favor, the Tax Court swiftly concluded:

> Once the petition was filed in this case, [the Commissioner] proceeded in a timely fashion and gathered sufficient information to concede this case. Accordingly, we reject petitioner's contention that it is unreasonable under the instant circumstances for [the Commissioner] to concede a case in one office and not another.

*Id.* at 830.

Because the Tax Court had determined that the Commissioner's position for the duration of the civil proceeding was not unreasonable, that court did not reach a second issue it had set out in the opening paragraph of its opinion: "whether [Baker] had exhausted the administrative remedies available to him within the Internal Revenue Service." *Id.* at 823, 831; *see* 26 U.S.C. § 7430(b)(2) (requirement that administrative remedies be exhausted). Baker moved for Tax Court reconsideration of the disposition of his application for an award of costs. When the Tax Court denied reconsideration, he appealed to this court.

## III. DECISION

Our view of this case accords with that of the Tax Court a good part of the way. We agree that section 7430 and its legislative history are both literally and sensibly read to cover only costs incurred once litigation commences, and that the relevant *position* of the United States is the one taken *in the civil proceeding. See* 83 T.C. at 827.[8] The Tax Court, we therefore hold,

---

8. In this respect, we note, 26 U.S.C. § 7430 differs from the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1982) (as amended by Pub.L. No. 99–80, 99 Stat. 183, Sec. 2(c)(2), to be codified at 28 U.S.C. § 2412(d)(2)(D)). Prior to 1985, circuit courts were split on whether, under the EAJA, the underlying agency action giving rise to the litigation could be considered in evaluating the reasonableness of the government's position. In 1985, Congress responded when it extended and amended the EAJA. While signalling no view on the validity of either interpretation of the statute as originally enacted, Congress provided that henceforth the "position of the United States" would include "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D), added by Act of August 5, 1985,

properly declined to inspect for reasonableness (1) the adoption of the regulation defining a "camp," and (2) the initial deficiency determination based on that regulation. *See id.* Nor do we take issue with the Tax Court's conclusion that the Commissioner's legal position, at the time Baker filed his petition with that court, appeared to be within the pale of reason. *See id.* at 829.

We part ways with the Tax Court only at the last step of its decision. The Commissioner's position, even if apparently reasonable in April 1983 when Baker filed his petition, may not have remained so. If, for example, by the fall of the year, the position had been reconsidered and rejected within the IRS, then we would count it unreasonable for the position to persist, singularly, in Baker's case. *Cf. United States v. O'Crowley,* 786 F.2d 1171 (8th Cir.1986) (corporate officer who prevailed in action for unpaid employment taxes was awarded fee under Equal Access to Justice Act on ground, *inter alia,* that government failed to reevaluate its case against him after fellow officer prevailed, and received fee award, in a similar case).[9]

Baker does not argue that it is necessarily unreasonable "for [the Commissioner] to concede a case in one office and not in another." *Id.* at 830. He does argue, however, that there are circumstances in which it is arbitrary for the Commissioner to concede in one region but not in another, and that his case is an instance of such irrationality. In face of this argument, we think the Tax Court prematurely concluded, without a proper inquiry into "the instant circumstances," *see supra* p. 641, that Baker could not legitimately charge the United States with maintaining an unreasonable position as to him.

Baker had attempted to bring home to the appeals officer in Cleveland the reasons why his petition warranted a prompt concession. As recounted in his motion for costs, Baker had raised these "instant circumstances":

> While the [IRS] was denying the benefits of Section 911 to the Petitioner, [it] was simultaneously granting the benefits of Section 911 to Laverne S. McManus and other taxpayers living and working in greater Riyadh limits under essentially the same circumstances as the Petitioner.

Motion for Litigation Costs, ¶ 3(B)(vii), App. at 43 (Motion). Baker further asserted that he repeatedly asked the appeals officer

> to explain how some taxpayers who were in the same situation as the Petitioner were being granted the Section 911 exclusion while the Petitioner was being denied it[.]

*Id.* at ¶ 3(B)(ix), App. at 44.

Baker's own inquiry, after he filed his petition, had uncovered the differential treatment of other King Faisal Hospital United States taxpayer employees. *See supra* p. 640. The IRS personnel in Cleveland dealing with the litigation, Baker charged, never alerted him to the fact that the Commissioner was "applying different standards to ... other taxpayers than the standards which were being urged against petitioner." Motion at ¶ 3(B)(ix), App. at 44. Baker complained that the Commissioner's attorney in his Tax Court case required him constantly to restate facts and evidence he had earlier stated to the auditor and appeals officer, and invariably determined that Baker's submissions were insufficient, without informing Baker "ex-

---

Pub.L. No. 99–80, Sec. 2(c)(2), 99 Stat. 183. Unlike the original and amended versions of the EAJA, the phrase "position of the United States" in section 7430 is immediately modified by the words "in the civil proceeding," indicating a focus narrower than the EAJA's. *But see Kaufman v. Egger,* 758 F.2d 1, 3–4 (1st Cir.1985) (prelitigation conduct may be considered in evaluating reasonableness of government's position under section 7430).

**9.** For tax litigation commenced on or after March 1, 1983, 26 U.S.C. § 7430 supersedes the EAJA. Tax Equity and Fiscal Responsibility Act, Pub.L. No. 97–248, 96 Stat. 324 (1982). The EAJA, although formerly applicable to tax litigation commenced in district courts, did not apply to Tax Court proceedings. *See, e.g., Engles Coin Shop, Inc. v. Comm'r,* 52 T.C.M. (P–H) ¶ 83,561 (T.C.1983); *Jenny v. Comm'r,* 52 T.C.M. (P–H) ¶ 83,001 (T.C.1983).

actly what information he believed was sufficient." *Id.* In Baker's view,

> [t]he only relevant fact which was unknown throughout this case was why the [IRS] took one view of the facts with respect to the Petitioner, and another view of the [same] facts with respect to Laverne S. McManus and other, similarly situated taxpayers who were granted the benefits of Section 911 while the Petitioner was being denied them.

*Id.* at ¶ 3(B)(x), App. at 45.

The Tax Court specifically had before it, as earlier set out in this opinion, *see supra* p. 640, Baker's report that when he informed the appeals officer of the prompt concessions made to identically situated taxpayers, the appeals officer demurred: "it probably would not matter because each case was decided on its own merits." Memorandum Supporting Motion for Litigation Costs at 3, App. at 51. If indeed the cases were identical in all relevant respects, then the comment "each case was decided on its own merits" hardly answered Baker's objection.

In light of the circumstances Baker urged before the Tax Court, we do not comprehend how that court could have "viewed the facts in a manner most favorable to petitioner," 83 T.C. at 828 n. 4, when it determined that he had not encountered unreasonable conduct on the part of the United States in the civil proceeding. The Tax Court "look[ed] for guidance to certain cases decided under the Equal Access to Justice Act," *id.* at 828,[10] including this court's decision in *Spencer v. NLRB,* 712 F.2d 539 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). The Tax Court did not note, however, the attention courts give under that Act to situations in which it appears that

"officials [have] adopt[ed] a general policy in dealing with cases of a given variety but [have] take[n] a different position (inexplicably or maliciously) in one or a few cases." *Spencer,* 712 F.2d at 560.

We believe that the observation this court made with respect to the Equal Access to Justice Act in *Spencer* should also guide dispositions under 26 U.S.C. § 7430: "a court ... should demand that the government make a particularly strong showing of justification for its position when there is evidence that the petitioner was subjected to *atypically* harsh treatment." *Spencer,* 712 F.2d at 561 (emphasis in original). Tax cases, we add, are encompassed within the general concern that officialdom avoid arbitrary distinctions between like cases. *See Baker v. United States,* 748 F.2d 1465, 1467 (11th Cir.1984); *International Business Machine Corp. v. United States,* 343 F.2d 914, 920, 170 Ct.Cl. 357 (1965), *cert. denied,* 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966).

In sum, if one views the facts in a manner most favorable to Baker, *see* 83 T.C. at 828 n. 4, 830 n. 7, this picture is drawn. Baker, after filing his petition, repeatedly informed the IRS officials with whom he dealt that identically situated taxpayers had gained concessions of their entitlement to the section 911 camp exclusion merely by furnishing verification that they were required to live in housing provided by the King Faisal Hospital. These concessions were made at the IRS Washington, D.C., office to which most cases of United States taxpayers employed abroad are referred. Nonetheless, the Cleveland personnel processing Baker's Tax Court petition took no steps at all, prior to the time Baker re-

---

**10.** Under the EAJA, the government bears the burden of demonstrating that its position was "substantially justified," *Spencer v. NLRB,* 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), while it is the taxpayer's burden under 26 U.S.C. § 7430 to "establish[ ] that the position of the United States in the civil proceeding was unreasonable." For the view that the EAJA calls for an inquiry into the "reasonableness" of the

government's position (the same inquiry as under section 7430), see *Ashburn v. United States,* 740 F.2d 843, 850 (11th Cir.1983); *Foster v. Tourtellote,* 704 F.2d 1109, 1112 (9th Cir.1983); and *S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426, 430 (5th Cir.1982). This circuit, however, has indicated that the standard under the EAJA is "slightly more stringent than 'one of reasonableness.'" *Spencer,* 712 F.2d at 558.

tained counsel, to determine how the Washington, D.C., office had proceeded and why.

So viewing the facts, we conclude that Baker's motion for litigation costs could not be resolved without a hearing. The hearing would focus on the following questions. Had it become IRS policy to concede the 911 camp exclusion to persons who had no choice to live outside the housing compound or complex to which their employer assigned them? Was it reasonable to insist on documentation from Baker beyond verification that he lived in such housing? Did the IRS routinely concede exclusions on the basis of the documentation Baker originally provided? Did the IRS officers in Cleveland inquire, in the fall of 1983, about the handling in Washington, D.C., of the camp exclusion claimed by Baker's co-workers? Was Baker's case different in any relevant respect from that of the King Faisal Hospital employees who were accorded quick concessions? Answers to these questions should enable the Tax Court to decide, intelligently, whether "the position of the United States in the civil proceeding [commenced by Baker's petition] was reasonable." 26 U.S.C. § 7430(c)(2)(A)(i).

We emphasize, finally, the limited, situation-specific character of our holding. While vacating the Tax Court's judgment and remanding for a hearing in this case, our decision should not be read to open a broad avenue for section 7430 litigation by every taxpayer displeased with the reluctance of the IRS to concede a case. As the Tax Court correctly stressed, the Commissioner's concession of a case does not automatically mean that his position in the civil proceeding was unreasonable. 83 T.C. at 828. Each IRS office, we recognize, must have leeway to evaluate a variety of factors in deciding whether to settle or concede, without concern that the government may be exposed to a cost award if another IRS office evaluates a similar congeries of circumstances differently. Nor do we intend to suggest that agents throughout the widespread enforcement apparatus of the IRS reasonably can be expected to march in lock step. Differences of position between offices will oc-

cur, and their mere occurrence hardly suffices to trigger government liability for a taxpayer's counsel fees.

Without intruding on legitimate exercises of discretion, we rest our decision on the special circumstances of this particular case. First, Baker complained about disadvantageous treatment in comparison to *identically* situated taxpayers, persons working at the same place for the same employer and required to live, as he was, in housing provided near the workplace by, and for the benefit of, the employer. Second, Baker's allegations suggest that the officials handling his case had turned a totally deaf ear to his *pro se* pleas that he had been singled out to run an obstacle course for no apparent reason. Not even a minimal effort was made, we must assume at this stage, to determine, before Baker engaged counsel, whether the merits of his case were any different from the merits of his co-workers' cases, and whether the IRS officers in Cleveland were acting in accord with the Commissioner's position as it had evolved by the fall of 1983. *See O'Crowley, supra* (factor in awarding fee in action for unpaid employment taxes was government's failure to investigate evidence offered by corporate officer in support of his position).

It may be that a hearing under the Tax Court's Rule 232(a)(3), *see supra* note 2, will show that there was a rational basis for the delay in conceding Baker's case, so that he did not in fact suffer arbitrary treatment. The record as it now stands, however, does not permit the conclusion that Baker encountered no abusive exercise of official discretion. Accordingly, we vacate the Tax Court's judgment denying Baker's motion for litigation costs and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*