Paul PLOWMAN, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV-85-2334-W.

United States District Court, W.D. Oklahoma.

Dec. 18, 1986.

Timothy M. Larason, Ann M. Threlkeld, Andrews, Davis, Legg, Bixler Milsten & Murrah, Oklahoma City, Okl., for plaintiffs.

William S. Price, U.S. Atty., Michael M. Gibson, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## ORDER

LEE R. WEST, District Judge.

Plaintiffs, Paul E. Plowman and Patricia Plowman, move this Court for an award of litigation costs pursuant to § 7430 of the Internal Revenue Code (26 U.S.C. § 7430) in the above-captioned case. Plaintiffs filed an action to recover $27,036.53 in taxes and interest, erroneously assessed and collected by the Internal Revenue Service. The Plaintiffs' cause of action also sought accrued interest, costs and attorney fees. The additional tax liability which Plaintiffs disputed arose from the disallowance of deductions taken for prepaid intangible drilling and development costs and management fees in two oil and gas drilling programs. Plaintiffs received a Notice of Deficiency from the Internal Revenue Service and on November 22, 1978 paid to the IRS the full amount of the 1973 deficiency, plus

interest to date. On December 7, 1979, Plaintiffs filed with the IRS a claim for refund of the deficiency plus interest paid by them. Subsequently, on June 14, 1985, the District Director of Internal Revenue, Oklahoma City, mailed to Plaintiffs a Notice of Disallowance of Claim for Refund for 1973.

Plaintiffs are the prevailing parties in this action for refund of income tax as a result of Defendant's complete concession, contained in a Stipulation for Entry of Judgment in favor of Plaintiffs, entered by this Court on July 23, 1986.

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324 § 292(a), amended the Internal Revenue Code of 1954 (26 U.S.C.) to authorize the award of reasonable attorney fees and other litigation costs to parties who substantially prevail in civil tax litigation in federal court. In order to qualify under § 7430 to be awarded reasonable litigation costs, a party must meet three criteria: (1) substantially prevail, (2) exhaust administrative remedies, and (3) establish the government's position in the proceeding was unreasonable. In the instant case, the United States concedes Plaintiffs have exhausted their administrative remedies and that Plaintiffs have substantially prevailed in this proceeding. The only issue before this Court is whether the Government's litigation position was unreasonable. If so, this Court must then determine the amount of attorney fees and litigation costs reasonably incurred as a result thereof.

The United States argues that § 7430 of the Internal Revenue Code makes, by its terms, an award of fees dependent upon an examination of "the position of the United States in the civil proceeding" and defines civil proceeding as an action "brought in a court of the United States." (Defendant's Memorandum in Opposition to Plaintiffs' Motion for Award of Litigation Costs, p. 4.) Thus, the Government interprets "position of the United States" for purposes of this Section to mean the Government's in court litigating position. Hence, until a complaint is filed in a lawsuit, according to the Government, there is simply no "civil pro-

ceeding" in which the Government's position can be analyzed. The United States cites a recent Tenth Circuit decision which held that the "litigating position" of the United States for purposes of awarding litigation costs under § 7430 of the Internal Revenue Code, refers solely to the Government's position after a complaint has been filed. *See United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440 (10th Cir.1985). Since Plaintiffs' Motion for Award of Litigation Expenses alleges unreasonable conduct by the Internal Revenue Service in disallowing claimed deductions for expenses associated with oil and gas partnership investments, constituting conduct prior to the filing of this complaint, the Government would have this Court ignore such conduct, whether it appears reasonable or unreasonable, for purposes of determining Plaintiffs' entitlement to litigation costs under § 7430. Plaintiffs argue that "position" under § 7430 was intended to include, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Plaintiff's Reply to Defendant's Memorandum in Opposition to the Motion for Award of Litigation Costs, p. 3.

The Government also relies upon *White v. U.S.,* 740 F.2d 836 (11th Cir.1984), in support of the position that "litigation position" for purposes of awarding litigation costs pursuant to § 7430 refers strictly to the Government's position after a complaint has been filed. *White* involved a similar provision under the Equal Access to Justice Act, as opposed to Sec. 7430, which applied to tax controversies prior to enactment of Sec. 7430. In *White,* the Eleventh Cir. held only the position of the Government after litigation commenced could be considered. Similarly, the Tenth Circuit, prior to *White,* had concluded "position" of the Government encompassed only the position after the litigation commenced, in a non-tax Equal Access to Justice Act case, *United States v. 2116 Boxes of Boned Beef,* 726 F.2d 1481 (10th Cir.1984), *cert. denied,* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

In 1985, Congress amended the Equal Access to Justice Act to clarify that the "position of the United States" was intended to include "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). The Fifth Circuit stated in *Russell v. National Mediation Board*, 775 F.2d 1284, 1286 (5th Cir.1985), that the legislative history behind this amendment had been held to show the additional statutory language was meant only to "clarify existing law."

Therefore, a split in the circuits as to the interpretation of "position of the United States" resulted. The First Circuit considered this issue under § 7430 in *Kaufman v. Egger*, 758 F.2d 1 (1st Cir.1985). That court concluded that, in deference to congressional intent, the IRS's liability should "be triggered by unreasonable IRS conduct regardless of which stage in the proceedings such conduct occurs," and examined both the pre-litigation position and the litigation position, in setting litigation costs.

In *Balanced Financial Management,* the Tenth Circuit referenced *Kaufman* in a footnote, and noted a positive difference between standards involved in an award of attorneys fees under the Equal Access to Justice Act and under § 7430, existed. This footnote observation and the decision in which it was contained were issued five days before Congress amended the Equal Access to Justice Act. *See Peavy v. United States,* 625 F.Supp. 974 (D.C.Colo.1986). Subsequently, the courts have taken into account the Government's administrative position that necessitated the commencement of tax court litigation by the taxpayer, in assessing litigation costs pursuant to § 7430. *See, e.g., Powell v. Commissioner,* 791 F.2d 385 (5th Cir.1986) [58 AFTR 2d 86–5215; 86–2 USTC ¶ 9486]; *Baker v. Commissioner,* 787 F.2d 637 (D.C.Cir.1986) [57 AFTR 2d 86–1106; 86–1 USTC § 9611]. *Baker* concludes that "if a taxpayer is forced to resort to litigation by an unreasonable IRS administrative position, § 7430 does not require the captious position to be ignored.... If the IRS takes an arbitrary position and forces the taxpayer to file a suit, then, after the papers have been filed, becomes sweet reason, the taxpayer should be permitted to recover the costs of suing.... This reading of § 7430 allows tax litigants to recover the costs of a civil proceeding they never should have been require to initiate. So read, § 7430 furthers the congressional purpose behind awarding attorney fees—to 'enable tax payers to vindicate their rights regardless of their economic circumstances' and to 'deter abusive actions and overreaching by the Internal Revenue Service.' "

■ In light of the more recent Circuit Court opinions, and taking into consideration that the Tenth Circuit has adopted a parallel standard of interpretation for "position of the United States" under the Equal Access to Justice Act and under § 7430, the former having been amended to include pre-litigation actions, this Court adopts the position that the conduct of the Government prior to the instigation of litigation may be considered in awarding fees and costs under § 7430. This Court believes that the Tenth Circuit will ultimately adopt such a view, when presented with the issue, in light of the amendments to the Equal Access to Justice Act, and in light of more recent circuit court opinions. The Court notes this view is consistent with that of the Tax Reform Act of 1986, Public Law 99–514, which modifies Sec. 7430 to conform to the Equal Access to Justice Act (Sec. 1551) so that "position of the U.S." includes "any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based." Pub.L. 99–514, Sec. 1551(e). This definition of "position" applies to civil actions commenced after December 31, 1985, pursuant to the Tax Reform Act of 1986.

Plaintiffs point to two cases from Oklahoma district courts which Plaintiffs argue demonstrate that the Government's position in the instant case was unreasonable: *Dillingham v. U.S.,* 81–2, 87–060549 U.S. T.C. ¶ 9601 (W.D.Okla.1981) and *Flynn En-*

*ergy Corp, et al v. U.S.*, 78–C–532–E and 79–C–549–E (N.D.Okla.1984).

In *Dillingham*, this Court held non-recourse loans from a corporation, which was the general partner in a limited partnership formed to finance oil and gas drilling by such corporation to the taxpayer, were includable in the adjusted basis of the taxpayer's interest in the partnerships, since the amounts represented valid debt. Alternatively, this Court stated such amounts were the proceeds of production payments, treated as debt by Internal Revenue Code § 636. This Court elaborated that the loans, while contingent, carried with them a reasonable likelihood of repayment since they were secured by a large number of low risk oil and gas properties. Not all the investors in the drilling partnership took advantage of the loans, which indicated to this court the value of the property which secured the nonrecourse debt was equal to or greater than the value of said debt. This Court further held that the amounts paid for intangible drilling costs were deductible in the year that such payments were made. The payments in *Dillingham* were made by a limited partnership as owner of oil and gas property, to its general partner, as drilling contractor, pursuant to a turnkey contract. In *Dillingham*, prepayment was required by the contract. This Court held the management fee also was deductible, pro rata to the deduction allowed for intangible drilling and development costs.

The facts of *Dillingham* reveal that the plaintiffs had invested as limited partners in five drilling partnerships, which were to acquire interests in oil and gas properties, including a large percentage of low risk prospects, and conduct drilling and production operations on those properties. Approximately thirty percent of plaintiff's subscriptions in *Dillingham* to each drilling partnership were financed with a nonrecourse loan from Basin Petroleum Corporation, which was engaged in oil and gas exploration and contract drilling of oil and gas wells. The non-recourse loan from Basin was secured by 100% of the plaintiff's interest in the drilling partnership, and each note required that 100% of plaintiff's distributions from the drilling partnership and 100% of the proceeds from the bank non-recourse loan that might later be arranged, be applied to principal and interest on the Basin loans. Plaintiff claimed all the prepayments as deductions on the partnership income tax returns for the initial year of the drilling partnerships, and also claimed management fees and amounts paid as interest on the Basin non-recourse loan. Written turnkey contracts were prepared and signed on behalf of Basin and the drilling partnership, which required Basin to drill and complete or abandon, or cause to be drilled and completed or abandoned, the wells described on the prospect analysis for the specified turnkey prices. The various turnkey prices were reasonable prices for drilling of the wells under the terms of the turnkey contracts.

Similarly, the plaintiffs in the instant case participated in a limited partnership, engaged in exploration for oil and gas. The Internal Revenue Service disallowed deductions Plaintiffs claimed for prepaid intangible drilling costs and also disallowed a claimed deduction for management fees incurred during the calendar year 1973. As a result of the Revenue Agent's adjustments, disallowing said deductions, the taxpayers' taxable income was increased for calendar year 1973, which resulted in the taxpayers' payment of additional income taxes and interest thereon.

Similar deductions were disallowed by Defendant for prepaid intangible drilling and development costs and management fees paid by the Basin Petroleum 1971 Private Drilling Fund. As a result of this disallowance, Plaintiffs overpaid their federal income taxes for calendar year 1968, in addition to the overpayment for calendar year 1973. However, this Court had already determined that such costs and fees are properly deductible in the year in which payments were made, in *Dillingham*, a decision of which the United States was aware at the time it disallowed the deductions claimed in the case at bar. In fact, the attorney for the United States in the instant case, Michael M. Gibson, was the attorney of record for the United

States in another similar case, *Flynn Energy Corporation, et al v. United States,* which held management fees were deductible in full under § 707(c) of the Internal Revenue Code, and that the amounts incurred by oil and gas partnerships on turnkey drilling contracts in excess of the amounts subscribed by participants constituted losses to respective drilling partnerships, and that the parties were entitled to deductions therefor. In *Flynn,* investor programs were established which provided for the investment by limited partners in private drilling programs with companion drilling partnerships. Plaintiffs claimed losses from some of the drilling partnerships and drilling programs and the Internal Revenue Service disallowed a partnership loss from one of the private drilling programs, which plaintiffs claimed on their 1973 joint income tax return. *Flynn* also involved turnkey contracts, entered into by plaintiff Flynn Energy Corporation, and the turnkey prices in *Flynn* were reasonable prices for the drilling of wells under the turnkey contracts entered into, just as in the case at bar.

Defendant United States argues that since Plaintiffs invested not merely in Basin Petroleum, which was a partnership involved in the *Dillingham* case, but in two separate oil and gas tax shelters, at least one of which had never been litigated, the Government was "reasonable" in its disallowance of Plaintiffs deductions, and in its extensive requests for information and documents related to these other partnership agreements. Presumably the Government believed there existed a pressing need to probe the intricacies of these partnerships prior to allowing or disallowing Plaintiffs' claimed deductions. The Government argues it would be wholly unreasonable for it to immediately concede a case if its trial counsel knew nothing about the facts which gave rise to the suit. (Defendant's Memorandum at pp. 6–7). However, it appears to this Court that Defendant was aware of such facts prior to its numerous requests for documents from Plaintiffs. A cursory explanation of the facts and circumstances surrounding the claimed deductions was given on Plaintiffs' Amended United States Individual Income Tax Return, attached to Plaintiffs' Complaint.

Based upon the foregoing facts and conclusions, this Court believes Defendant United States' conduct in its pre-litigation position in the instant case was unreasonable. Therefore, under § 7430, Plaintiffs are entitled to litigation costs, including a reasonable attorneys' fee.

Therefore, this Court must determine the amount of attorneys' fees and costs Plaintiffs should be awarded. Plaintiffs contracted with their attorneys on a 50% contingent fee basis for their efforts in the instant case, upon disallowance of Plaintiffs' claim for refund by the Internal Revenue Service. Plaintiffs state in their Motion for Award of Litigation Costs and Brief in Support, that the contingent fee alternative was chosen, as opposed to an hourly base fee, because Plaintiffs and their attorneys believed fees on an hourly rate basis might have equalled the recovery had a trial been required as to all issues involving Plaintiffs' deductions from the two oil and gas drilling partnership. Plaintiffs point to the fact the refund claim had been pending for more than five years, said claim was disallowed more than two years after the *Flynn* and *Dillingham* decisions, and that a trial would have resulted in voluminous work and accumulation of hours by their attorneys. Consequently, Plaintiffs have incurred legal fees in the amount of $30,426.76. However, Plaintiffs suggest that instead of awarding the fifty percent contingency fee, this Court should increase the amounts which would have been charged by Plaintiffs' attorneys on an hourly rate basis. *Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184 (11th Cir.1983), *reh'g denied,* 715 F.2d 580, *cert. denied,* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178. As such, Plaintiffs argue the hourly rate of Plaintiffs' attorneys should be doubled to arrive at a reasonable fee under the circumstances of this case. *See, Rajender v. University of Minn.,* 546 F.Supp. 158 (D.Minn.1982). Such total amount would be $11,525.00 for attorney fees and costs.

The standard fee for this case, when the Court considers the hours expended by Plaintiffs' attorneys, and the hourly fee therefor, actually was $5,762.50. Defendant argues this amount is the "reasonable" attorneys fee that the Court should award.

The initial estimate of a reasonable attorney fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The Supreme Court explored the issue of a fifty percent bonus in attorney fees in *Blum* which involved a cause of action under 42 U.S.C. § 1988. That statute provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney fee as part of the costs." The Supreme Court stated in *Blum* that there was no merit to the argument that an "upward adjustment" of a reasonable attorney fee—calculated by multiplying the reasonable number of hours expended times a reasonable hourly fee,—is never permissible. That particular statute and its legislative history, the Supreme Court held, established that the product of reasonable hours times a reasonable rate, normally provides a "reasonable attorney fee, but in some case of exceptional success and enhanced award may be justified." *Blum*, at pp. 897–900, 104 S.Ct. at pp. 1548-49. Normally, an upward adjustment is merited when the complexity of the litigation, the novelty of the issues, the high qualify of representation, and a "great benefit" to a particular class are present. Also, an upward adjustment on the basis of the "riskiness" of the lawsuit may be considered. *Blum v. Stenson*, at pp. 897–900, 104 S.Ct. at pp. 1548-49. In *Blum*, the court held that the record did not justify the district court's upward adjustment on the basis of the "riskiness" of the lawsuit. Similarly, in the case at bar, the facts do not justify an upward adjustment. Therefore, the Court concludes that an upward adjustment in this case is inappropriate.

Accordingly, it is hereby ORDERED that Plaintiffs be awarded attorneys' litigation costs in the amount of $5,762.50 to be paid by Defendant, in the instant case.

It is further ORDERED that this Court finds Defendant's position in the case at bar to have been completely unreasonable, under § 7430 of the Tax Equity and Fiscal Responsibility Act of 1982, as amended.