JOSEPH P. AND JOANN T. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 30177-85.
United States Tax Court
T.C. Memo 1989-144; 1989 Tax Ct. Memo LEXIS 143; 57 T.C.M. (CCH) 5; T.C.M. (RIA) 89144; April 4, 1989; As amended April 6, 1989 Edward I. Markendorff, for the petitioners. Bonnie L. Cameron, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal *145 income tax for the taxable year 1982 in the amount of $ 3,325. Respondent has conceded the issue raised in the petition, and the case is before the Court on petitioners' motion for an award of reasonable litigation costs under section 7430. [1]
FINDINGS OF FACT [2]
*146 At the time the petition was filed in this case, petitioners resided at Myrtle Beach, South Carolina, but during the year before the Court, 1982, they lived in North Carolina. Petitioner Joseph P. Brown is a construction worker and petitioner Joann T. Brown is now a bank employee. His Social Security Number is 237-72-XXXX, and hers is 241-70-XXXX. In 1982 Mr. Brown worked for Central Drywall and Ceiling, Inc., located in Ashboro, North Carolina, and for Shields, Inc., located in Winston-Salem, North Carolina. That year Mrs. Brown worked for the Montgomery County Board of Education, located in Troy, North Carolina. Through the computer-matching program (Information Returns Program or IRP) of the Internal Revenue Service, respondent receives information returns from employers reporting W-2 wage payments and from financial institutions reporting Form 1099 interest payments, which are computer-matched through Social Security Numbers with the tax returns filed by the payees of such wages or such interest payments. Under the IRP, respondent in 1982 received information of the following income items that were not reported on petitioners' Federal income tax return for that year: *147 Social
Security
Payee's
Payor's Name
Item
Amount
Number
Name
Oberg Construction Corp.
P.O. Box 747
Simi Valley, CA 93065
W-2 Wages
$ 12,204
241-70-XXXX
J. P. Brown
Bowling Specialists
18321 Ludlow Street
Northridge, CA 91326
W-2 Wages
1,508
241-70-XXXX
J. P. Brown
Montgomery Federal Savings
Form 1099
71
237-72-XXXX
Joseph P.
Interest
Brown
On October 19, 1984, respondent wrote to petitioners inquiring about these amounts of apparently unreported income. On November 16, 1984, Mrs. Brown responded that neither she nor her husband had ever heard of those two California companies, that they had never worked for them, and that they had never received any money from them. [3]
*148 In late February and early March of 1985, respondent attempted to contact Oberg Construction and Bowling Specialists but received no response to the inquiries. On or about March 22, 1985, petitioners received a 30-day letter proposing to determine additional tax in regard to the omitted income items. On April 5, 1985, petitioners retained their present counsel. On May 6, 1985, respondent issued the statutory notice of deficiency to petitioners, determining a deficiency based on the failure to report the two items of W-2 wage income and the item of interest income. The deficiency notice stated as follows: I have included the addresses of the companies reporting the above wages. You should contact them with the information forms included for verification, if you did not receive the income. [names and addresses omitted] * * * The record does not indicate that petitioners or their counsel ever tried to contact the companies that issued the W-2 Wage Statements. Before receiving a copy of the deficiency notice, petitioners' counsel, by letter dated May 9, 1985, wrote to the Internal Revenue Service Center in Memphis, Tennessee, stating that petitioners did not receive any *149 income from the two California companies and that no income was due to them from those companies. Petitioners' counsel requested that the case be transferred to the Columbia, South Carolina District Office for assignment to the Myrtle Beach Field Office for processing, and on June 13, 1985, the case was transferred to Columbia. On August 5, 1985, petitioners filed their petition in this Court, denying the receipt of the W-2 wage income from Oberg Construction and Bowling Specialists. They raised no issue as to the omitted interest income item, and concede that they omitted that interest income from their tax return. Respondent's answer was filed on October 15, 1985. In the meantime the case files having arrived at the Columbia, South Carolina District Office, petitioners' counsel was contacted by someone from the office and had an opportunity to examine the files, apparently on or about September 11, 1985. Sometime in October of 1985, the Internal Revenue Service Appeals Office wrote to petitioners' counsel to discuss settlement. Apparently nothing happened thereafter until on or about June 11, 1986 when the Appeals Office scheduled a conference for July 11, 1986. At some *150 point in August or September of 1986, petitioners' counsel and an Appeals Officer, one Mrs. Ayers, also discussed the case by telephone. Mrs. Ayers had suggested in July that she would accept affidavits from Mr. and Mrs. Brown. Petitioners' counsel began preparation of such affidavits in July of 1986 and mailed them to respondent on or about October 9, 1986. On or about November 3, 1986, Mrs. Ayers advised petitioners' counsel that she would concede the case. On or about November 3, 1986, petitioners' counsel indicated he wanted to make a claim for litigation costs and asked Mrs. Ayers for information as to how to make the claim. In response to his request to Mrs. Ayers, respondent's present trial counsel, by letter dated November 17, 1986, explained to petitioners' counsel the requirements of section 7430 and the requirements of the Court's Rules, specifically Rule 231(c) in regard to a stipulation of settlement to be attached to the motion for award of reasonable litigation costs. [4] Respondent's counsel also enclosed with her letter to petitioners' counsel copies of the Court's Rule 231 and Rule 232. On December 16, 1986, respondent's counsel sent petitioners' counsel a proposed *151 stipulated decision document showing no deficiency in tax due from, nor overpayment due to, petitioners for the taxable year 1982. See n.4, supra.
*152 After respondent's counsel sent her letter of November 17, 1986, petitioners' counsel took no further action. Between January 26, 1987 and September 25, 1987, respondent's counsel wrote to petitioners' counsel on four different occasions in regard to his signing the stipulated decision document or filing his motion for litigation costs. See n.4, supra. Petitioners' counsel did not respond to these letters. On June 16, 1987, the Court noticed the case for trial during the Columbia, South Carolina trial session commencing November 16, 1987. On October 2, 1987, petitioners' counsel filed the pending motion for award of reasonable litigation costs, seeking attorney's fees of $ 5,085 (56-1/2 hours x $ 90 per hour), plus other costs of $ 500, [5] totaling $ 5,585. OPINION Section 7430(a) authorizes an award of reasonable litigation costs to a prevailing party in a tax case. The determination as to whether a taxpayer is the prevailing party is made by the Court or by agreement *153 of the parties. Sec. 7430(c)(2)(B) [now sec. 7430(c)(4)(B)]. The term "prevailing party" is defined in section 7430(c)(2)(A) [now sec. 7430(c)(4)(A)]. Respondent agrees that petitioners here have substantially prevailed with respect to the amount in controversy and the most significant issue presented in this action, thus meeting the requirement of section 7430(c)(2)(A)(ii) [now sec. 7430(c)(4)(A)(ii)]. However, respondent says petitioners have not established that "the position of the United States in the civil proceeding" was unreasonable or not substantially justified, and hence have failed to satisfy the requirement of section 7430(c)(2)(A)(i) [now sec. 7430(c)(4)(A)(i)]. [6] Respondent also opposes an award of litigation costs on the ground that the amount of such costs claimed here is unreasonable. Sec. 7430(c)(1). *154 Thus, we must decide whether respondent's position "in the civil proceeding" was unreasonable. In deciding that issue this Court examines only the events occurring after the filing of the petition, i.e., only the Government's in-court litigating position. Rutana v. Commissioner,88 T.C. 1329, 1332 (1987); Don Casey Co. v. Commissioner,87 T.C. 847, 861-862 (1986); Wasie v. Commissioner,86 T.C. 962, 967-968 (1986); Baker v. Commissioner,83 T.C. 822, 827 (1984), affd. on this point 787 F.2d 637, 641-642 (D.C. Cir. 1986). The circuit courts are divided on this matter. The Eighth, Tenth, Eleventh, and District of Columbia Circuits have approved the position taken by this Court. Berks v. United States,860 F.2d 841 (8th Cir. 1988); Wickert v. Commissioner,842 F.2d 1005, 1008 (8th Cir. 1988); Ewing and Thomas, P.A. v. Heye,803 F.2d 613, 615-616 (11th Cir. 1986); Baker v. Commissioner,787 F.2d 637, 641 and n.8 (D.C. Cir. 1986); United States v. Balanced Financial Management, Inc.,769 F.2d 1440, 1450 (10th Cir. 1985); *155 Ashburn v. United States,740 F.2d 843, 848 (11th Cir. 1984). The First, Fifth, Sixth and Ninth Circuits have permitted both pre-litigation and litigation positions to be examined. Comer Family Trust v. Commissioner,856 F.2d 775, 780 (6th Cir. 1988); Sliwa v. Commissioner,839 F.2d 602, 606 (9th Cir. 1988); Powell v. Commissioner,791 F.2d 385, 388-392 (5th Cir. 1986); Kaufman v. Egger,758 F.2d 1, 4 (1st Cir. 1985). The Seventh Circuit declined the opportunity to take a position, finding that the Government's position both prior to and during litigation was not unreasonable. Harrison v. Commissioner,854 F.2d 263, 265 n.3 (7th Cir. 1988), affg. T.C. Memo. 1987-52, cert. denied   U.S.   , (1989). Since the United States Court of Appeals for the Fourth Circuit, the court to which any appeal in this case would lie, has not addressed this issue and since it is not clear whether or not petitioners are challenging this Court's position, we have considered all of the facts and circumstances in the record. We have examined all of the actions by respondent herein both *156 at the administrative stage and after the filing of the petition in this Court. Based upon the record as a whole, we cannot find that respondent's position was unreasonable or not substantially justified. [7]
*157 In this case the underlying substantive tax issue arose out of respondent's computer-matching program (the Information Returns Program or IRP). Under the IRP, W-2 wage income or Form 1099 interest income reported by employers or financial institutions is computer matched, by Social Security Numbers, with the tax returns of the payees of those income items. Here the IRP program disclosed three items of unreported income -- two W-2 wage items and one Form 1099 interest item. Petitioners concede that they failed to report the interest income item which was reported in petitioner-husband's correct name and under his correct Social Security Number. [8] As to the W-2 wage items, petitioners insist that they have never heard of the employers, Oberg Construction and Bowling Specialists, that they have never worked in California where those firms are located, and that they never received the $ 12,204 from Oberg Construction or the $ 1,508 from Bowling Specialists. In each instance the employer reported that income as having been earned by one "J. P. Brown" and under the Social Security Number 241-70-XXXX. That number is petitioner Joann T. Brown's correct Social Security Number, and the *158 name "J. P. Brown" is close to her initials and last name and is exactly the same as her husband's (Joseph P. Brown's), initials and last name. Before issuing the deficiency notice to petitioners, respondent tried to contact Oberg Construction and Bowling Specialists but received no response to the inquiries. In the deficiency notice respondent listed the employers' names and addresses and provided verification forms, suggesting that petitioners contact the employers *159 for verification if they did not receive the income. Neither petitioners nor their counsel ever did so. Petitioners wrote one letter to the Internal Revenue Service (IRS) after the initial IRS contact, and their counsel wrote one letter to the IRS Service Center in Memphis, Tennessee stating that his clients did not know the companies, had not worked in California, and did not receive the income. We cannot say that it was unreasonable for respondent to require something more than the taxpayers' mere denial that they received the income. After an Appeals Officer, Mrs. Ayers, got involved in the case, she suggested that she would accept affidavits from the taxpayers to that effect. Petitioners' counsel began drafting the affidavits in July of 1986 and submitted the affidavits on October 9, 1986. On or about November 3, 1986, Mrs. Ayers agreed to concede the case. We conclude that respondent acted reasonably in promptly conceding the case shortly after petitioners, through their counsel, had for the first time furnished some substantiation or a factual basis for such a concession. See and compare Harrison v. Commissioner,854 F.2d 263 (7th Cir. 1988), affg. a *160 Memorandum Opinion of this Court; Ashburn v. United States,740 F.2d 843 (11th Cir. 1984); Wickert v. Commissioner,842 F.2d 1005 (8th Cir. 1988), affg. a Memorandum Opinion of this Court; White v. United States,740 F.2d 836, 842 (11th Cir. 1984). [9]
That almost eight months apparently elapsed between the filing of the answer and Mrs. Ayer's suggestion of filing affidavits does not make respondent's action unreasonable. So far as the record shows, petitioners wrote one letter to respondent, and after they retained counsel, he wrote two letters to respondent, the one to the Memphis Service Center in May of 1985 stating that his clients did not receive *161 that income and the letter of October 9, 1986, forwarding the affidavits to Mrs. Ayers. In the entire period from the time he was retained on April 5, 1985 to the oral argument on his motion, those were the only two letters he wrote to respondent in regard to this case. The case was effectively settled within a short time after he forwarded the affidavits on October 9, 1986. Thereafter petitioners' counsel again did nothing about the case for almost a year, until he filed his motion for award of reasonable litigation costs almost four months after the Court noticed the case for trial. Respondent's trial counsel wrote to petitioners' counsel on November 17, 1986 to give him copies of the Court's Rules 231 and 232 and information about claiming litigation costs. Thereafter respondent's counsel wrote four more letters to petitioners' counsel to which he failed to respond. No action was taken by petitioners' counsel until after the Court scheduled the case for trial. On this record, the Court concludes that any delay in promptly disposing of this case is not attributable to any actions or inaction of respondent. Thus, we conclude that petitioners have failed to establish that *162 "the position of the United States in the civil proceeding" was unreasonable or not substantially justified within the meaning of section 7430(c)(2)(A)(i) [now sec. 7430(c)(4)(A)(i)]. Moreover, on the issue of the reasonableness of the amount of litigation costs sought, we feel compelled to note certain facts. The tax issue in this case was a very simple one, merely requiring some type of substantiation of petitioners' contention that they did not receive the W-2 wage income in issue. The impetus for and method leading to the Government's concession was suggested by respondent's Appeals Officer, not by petitioner's counsel. Petitioners appear to have done little to achieve the concession and nothing except delay the case once respondent had conceded the tax issue involved. On this record, we think the claim of litigation costs amounting to 168 percent ($ 5,585 / $ 3,325 = 1.679) of the amount of the deficiency involved is wholly unreasonable. The claimed attorney's fees of $ 5,085 (56-1/2 hours x $ 90 per hour) are unreasonable for this simple tax issue and for the little that petitioners' counsel did to bring about the resolution of the case. For these reasons, we will *163 deny the motion for award of litigation costs on the ground that "the position of the United States in the civil proceeding" was not unreasonable and on the ground that the amount of litigation costs sought was clearly unreasonable. An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. After petitioners' motion was filed, the Court issued an order stating that: On these papers and the Court's present record, it is not clear to the Court whether or not such relief may be warranted in this case. It would appear to the Court that an evidentiary hearing may well be required to develop a proper factual record. Accordingly, that order calendared the motion for hearing "including presentation of any relevant evidence either party wishes to offer." Petitioners did not appear at the hearing. Their counsel appeared and was heard on the motion. The record was supplemented by three documents. The findings of fact are based on the pleadings, an affidavit by petitioners' counsel, the motion papers, the three documents received at the oral argument, and certain statements by counsel on the record during the oral argument.↩
3. Petitioners complain that they have had similar problems with the Internal Revenue Service about reports of alleged income items in other years before 1982. Paragraph 4(a) of the Petition states: The Respondent negligently harassed the Petitioners again this year, as he has done in previous years, by proposing to add to their wage income, wages paid to other taxpayers with similar names, or whose Social Security Numbers were obviously erroneously listed on the W-2 Forms transmitted to the Respondent by employers unknown to the Petitioners. This allegation was denied in respondent's answer to the petition. While petitioners' counsel advanced vigorous arguments about the problem and about alleged harassment, there simply is no factual record to support petitioners' complaints. The Court afforded an opportunity for an evidentiary hearing (n2 , supra) to permit the parties to develop the facts. There are many unanswered questions as to the matters, answers that are needed to shed light upon this perplexing situation. Unfortunately, petitioners did not avail themselves of the opportunity to develop an evidentiary record in this Court. See n.2, supra.↩
4. We note that no stipulation of settlement has ever been filed with the Court in this case. Petitioners did attach to one copy of their motion for award of reasonable litigation costs a stipulated decision document showing no deficiency in income tax due from, nor overpayment due to, petitioners for the taxable year 1982. That stipulated decision document had been prepared by respondent's counsel and mailed to petitioners' counsel, but it has never been executed by respondent. That one copy that is in the Court's file is a Xerox copy bearing Xeroxed signatures by petitioners, but an original signature by petitioners' counsel dated September 28, 1987. Thus, properly speaking, there is no executed stipulated decision document nor stipulation of settlement in this case, as required by Rule 231(c). However, since it is undisputed that respondent has indeed fully conceded the case (apparently even the $ 71 interest item that petitioners concede they improperly omitted from their return), the Court will treat the unilateral stipulated decision document as the parties' de facto stipulation of settlement.↩
5. The other costs claimed were as follows: ↩
Copy costs
$ 18.00
Mileage
314.00
Long-distance
telephone calls
106.06
Postage
1.94
Court filing fee
60.00
$ 500.00
6. Section 7430 came into the law for cases commenced after February 28, 1983. Section 292(a) of the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982, Pub. L. 97-248, 96 Stat. 324, 572-574. Section 7430(c)(2)(A)(i), as it applied to cases filed after February 28, 1983 and up through December 31, 1985, contained the "was unreasonable" language. For civil tax actions or proceedings commenced after December 31, 1985, section 1551(d)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752, changed that language to "was not substantially justified." However, this and other courts have held that the "substantially justified" standard is not a departure from the "reasonableness" standard. Sher v. Commissioner,89 T.C. 79, 84 and cases cited therein (1987), affd. 861 F.2d 131 (5th Cir. 1988); Rutana v. Commissioner,88 T.C. 1329, 1333 and cases cited therein (1987); Don Casey Co. v. Commissioner,87 T.C. 847, 857-861 and circuit court cases collated at 858 (1986). See also United States for Heydt v. Citizens State Bank,668 F.2d 444, 447↩ (8th Cir. 1982) ["The test of whether or not a Government action is substantially justified is essentially one of reasonableness."] In any event, the earlier version of section 7430(c)(2)(A)(i) is applicable in the instant case. We note, however, that our disposition of the matter would be the same under the 1986 statute. Section 6239(a) of the Technical and Miscellaneous Revenue Act (TAMRA) of 1988, Pub. L. 100-647, 102 Stat. 3743, further amended section 7430 in certain respects, but these amendments do not affect any holding in this case.
7. Our conclusion would be the same even with the changes made by the Tax Reform Act of 1986. Section 1551(e) of the Tax Reform Act of 1986, supra, amended section 7430(c) by adding a new paragraph (4) defining "position of the United States" as follows: (4) POSITION OF THE UNITED STATES. -- The term "position of the United States" includes -- (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based. There is now a split in the circuits as to the meaning of this statutory language. Compare Sher v. Commissioner,861 F.2d 131 (5th Cir. 1988), affg. 89 T.C. 79 (1987), with Weiss v. Commissioner,850 F.2d 111, 116 (2d Cir. 1988) (petition for rehearing en banc pending), revg. and remanding 89 T.C. 779 (1987). This Court follows the plain language of the statute that one looks at actions or inactions occurring at or after the point at which the District Counsel becomes involved in the matter. Gantner v. Commissioner,92 T.C. 192 (Jan. 30, 1989); Egan v. Commissioner,91 T.C. 705 (1988). Here the District Counsel first became involved in this case with the filing of the answer to the petition on October 15, 1985. On November 17, 1986, respondent's present trial counsel wrote to petitioners' counsel to furnish him the information he sought in regard to making a claim for litigation costs. That was the second involvement of the District Counsel in this matter. Hence, section 7430(c)(4) would not affect the outcome of this case in any event. Our conclusion would also be the same even with the changes made to section 7430 in 1988. Section 6239(a) of TAMRA, supra,↩ expanded section 7430 to cover administrative proceedings and to authorize the Internal Revenue Service to settle claims for reasonable administrative costs. Along with those changes, section 7430(c)(4) was redesignated as section 7430(c)(7) and "position of the United States" was expanded to cover "the position taken in an administrative proceeding." That in turn was to be determined "as of the earlier of" the date of the receipt by the taxpayer of the notice of the decision of the Appeals Office or the date of the notice of deficiency. 102 Stat. 3745-3746. Here, at the time the notice of deficiency was issued, which was the earlier of the two dates, respondent had received no documentation or other substantiation to support petitioners' claim that the W-2 wage income was not received by them. While the changes made by TAMRA are only applicable to proceedings commencing after November 10, 1988, those changes would not affect our holding in this case in any event.
8. Although petitioners complain that alleged unreported income items have been an ongoing problem for them for several years, they did not take advantage of the opportunity for an evidentiary hearing to make a record on this matter. See nn.2, 3, supra.↩ While statements by petitioners' counsel do indicate the existence of such incidents in earlier years, statements by respondent's counsel also indicate that petitioners had also in earlier years conceded that they omitted some items of W-2 wage income they should have reported. Hence while there may be some problems in how the system functions, the IRP is working in that it is flushing out items of taxable income that petitioners admittedly have failed to report.
9. There are numerous Memorandum Opinions of this Court where we have examined all of the facts and circumstances and found reasonable various periods of time to investigate the case and decide whether to concede. See, for example, Hubscher v. Commissioner,T.C. Memo. 1988-428; Coffey v. Commissioner,T.C. Memo. 1988-78; Shifman v. Commissioner,T.C. Memo. 1987-347; Rouffy v. Commissioner,T.C. Memo. 1987-5↩.